IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 17, 2003

## STATE OF TENNESSEE v. ANDREW J. ROCHESTER

**Direct Appeal from the Circuit Court for Wayne County**
**No. 12373     Robert L. Holloway, Judge**

---

**No. M2002-01332-CCA-R3-CD - Filed January 27, 2004**

---

The defendant was convicted of one count of burglary. He contends on appeal that 1) there is insufficient evidence to sustain the conviction, 2) no proper foundation was laid for opinion testimony by certain witnesses, 3) the warrantless search of the vehicle was improper, and 4) the trial court erred in sentencing the defendant. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

J. Daniel Freemon, Lawrenceburg, Tennessee, for the appellant, Andrew J. Rochester.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; T. Michel Bottoms, District Attorney General; J. Douglas Dicus, Assistant District Attorney General; for the appellee, State of Tennessee.

### OPINION

The defendant, Andrew J. Rochester, was found guilty of one count of burglary (Class D felony). Following a sentencing hearing, the trial court found that the defendant was a Range III, career offender and sentenced him to twelve years in the Tennessee Department of Correction. This appeal timely followed. The defendant contends on appeal that 1) there is insufficient evidence to sustain the conviction, 2) no proper foundation was laid for opinion testimony by certain witnesses, 3) the warrantless search of the vehicle was improper, and 4) the trial court erred in sentencing the defendant. The judgment of the trial court is affirmed.

**Facts**

At approximately 10:00 p.m. on March 28, 2000, Jennifer Skelton heard an alarm sounding. She initially thought that it was a car alarm. Skelton went outside of her home and discovered that the alarm at the Waynesboro Middle School, which was across the street, had been activated. Moments later, she saw a white Pontiac Grand Am speeding away from the school. Skelton, who worked at an auto parts store and was very familiar with different types of automobiles, was certain that the vehicle was a late eighties or early nineties model Grand Am. The vehicle left the school traveling in the direction of the jail. There was only one road leading in and out of the school grounds. Skelton immediately called the police and relayed what had transpired. Randall Whitehead, Skelton's boyfriend, was also present that night and verified what Skelton had witnessed.

Officer Gerald Henderson was at the Sheriff's Department when he received the call placed by Skelton. He pulled out and waited at an intersection. About a minute after the call, a white Pontiac Grand Am approached from the direction of the school. Henderson pulled beside the driver of the vehicle, later identified as the defendant, and engaged him in conversation. The defendant admitted that he had been at the school. He said that he stopped there to look at a map. While Henderson was giving directions to the defendant, another police officer was at the school checking for signs of a break-in. Henderson then noticed that the tags on the defendant's vehicle were expired. He ran the tags and discovered that they were registered to a different vehicle. While Henderson was issuing a citation to the defendant, the officer at the school radioed to Henderson that someone had broken into the school. Henderson asked the defendant to return to the school with him, and the defendant complied. Upon arriving at the school, Henderson noticed that there was damage to an inside door at the school. The glass window on the door had been broken, and there was also damage to the doorknob. It looked as if someone had tried to pry the door open. The defendant was placed under arrest and taken to the Sheriff's Department.

A search of the defendant's person revealed what Henderson described as "lock picking tools." Henderson said that he had seen these types of instruments used to pick locks in a friend's body shop. After the defendant had been placed in jail, Henderson and Officer William Bolitho, an investigator with the Waynesboro Police Department, conducted a search of the defendant's vehicle while it was in the parking lot of the Sheriff's Department. Henderson stated that they were looking for other evidence. The officers found a crowbar wedged between the passenger seat and the center console. Under the driver's seat, they also found a license plate registered to the vehicle.

Bolitho investigated the scene of the crime and stated that a glass panel on one of the inside doors to the office area had been broken. There was also damage to the doorknob and lock mechanism. Bolitho did not check for fingerprints. The officer never determined how the defendant gained access to the interior of the school building. Bolitho testified that a crowbar is commonly used to gain access to doorways. In his opinion, the shiny marks on the crowbar were "fresh." Additionally, he observed a white powder-like substance on the crowbar that he believed to be glass particles. Bolitho said the defendant told him that the tools found in his pocket were used for

removing fish hooks. A crime lab report indicated that the marks on the doorknob were "similar in size and contour of marks made by the tools on a test surface."

**Analysis**

The defendant has raised four issues on appeal. He contends that 1) there is insufficient evidence to sustain the conviction, 2) no proper foundation was laid for opinion testimony by certain witnesses, 3) the warrantless search of the vehicle was improper, and 4) the trial court erred in sentencing the defendant. We will address these issues in order.

I. Sufficiency of Evidence

The defendant first contends that the evidence is insufficient to sustain the conviction for burglary. When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This Court will not re-weigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

The defendant does not challenge whether the elements of burglary were proven by the State. He contends that he was not the person responsible for committing the offense. Two witnesses observed a white Pontiac Grand Am speeding away from the school shortly after the burglar alarm sounded. The defendant was stopped by Henderson coming from the direction of the school. The defendant was driving a white Pontiac Grand Am. The defendant admitted that he had been at the school. The officers found "lock-picking" tools in the defendant's pocket. The crime lab report indicated that test marks made by the tools were consistent with the marks found on the doorknob at the school. They also found a crowbar next to the passenger seat of the defendant's car. The officers found the correct license plate for the vehicle under the driver's seat, while the car displayed

a tag that did not belong to the vehicle. After viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant was the person responsible for committing this offense. This argument is without merit.

## II. Opinion Testimony by Officers

The defendant next contends that no proper foundation was laid for the officers to give opinion testimony as to whether the instruments were "lock-picking tools" or whether the marks on the crowbar were "fresh." The defendant never contemporaneously objected to these statements made by the witnesses on the grounds that they lacked expert qualifications. The defendant argued in a pre-trial motion that the "lock-picking tools" were irrelevant, but never objected on the basis of lack of expert qualification. Generally, a party's failure to take available action to prevent or nullify an alleged error waives the issue. Tenn. R. App. P. 36(a). The defendant has waived this issue on appeal. Therefore, the defendant's contention regarding the admissibility of these statements is without merit.

## III. Search of Vehicle

The defendant contends that the officers improperly searched his vehicle. Therefore, any evidence obtained should have been suppressed. As with the previous issue, the defendant has waived this issue on appeal. Tenn. R. App. P. 36(a). The defendant argued at the pre-trial motion that the evidence obtained from the vehicle should not be admitted because it was not relevant. He never raised the issue of an illegal search. In fact, the State and the trial court were under the impression that the defendant would be arguing illegal search. The defendant apologized to the court for the confusion and again stated that he was objecting based on the grounds of relevancy. This issue has been waived and is without merit.

## IV. Sentencing

Lastly, the defendant contends that the trial court erred in finding that the defendant was a Range III, "career offender." A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). When a defendant appeals the length, range, or manner of service of his or her sentence, it is this Court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

The defendant was convicted of a Class D felony. In order for the trial court to have properly found that the defendant is a Range III, "career offender," he must have "[a]t least six (6) prior felony convictions of any classification." Tenn. Code Ann. § 40-35-108(a)(3). "Convictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one

(1) conviction for the purpose of determining prior convictions[.]" Id. § 40-35-108(b)(4). The defendant argues that the prior convictions should have been proven by certified judgments. The State may prove the existence of prior convictions through methods other than the introduction of certified judgments. State v. Ralph Miller, No. 02C01-9709-CC-00361, 1998 Tenn. Crim. App. LEXIS 726, *2-3 (Tenn. Crim. App., Jackson, July 14, 1998); State v. Greg Lee Sword, No. 03C01-9203-CR-00074, 1993 Tenn. Crim. App. LEXIS 229, *3-8 (Tenn. Crim. App., Knoxville, Mar. 31, 1993). For example, a prior conviction may be proved if it "is set forth in the presentence report and it is not contradicted." Miller, 1998 Tenn. Crim. App. LEXIS 726, * 2-3 (citation omitted).

The presentence report introduced at the sentencing hearing reveals that the defendant has at least six prior felony convictions. It appears from the record that many of his approximately twenty-three felony convictions may have occurred within twenty-four hour periods. Even assuming that some of the convictions were part of a single course of conduct, the record still indicates that the defendant committed at least six prior felony offenses on the following dates: 2/19/92, 3/2/92, 3/12/92, 3/21/92, 10/21/92, and 10/1/95. The State did introduce certified judgments for three of the felony offenses in order to correct mistakes in the presentence report. However, as noted above, the State was not required to introduce certified judgments for all of the convictions. The defendant did not deny that any of the convictions occurred. The record supports the trial court's finding that the defendant is a Range III, "career offender." This issue is without merit.

In his brief, the defendant also addresses the application of several enhancement and mitigating factors to his sentence. Finding that the defendant is a Range III, "career offender," the trial court was required to sentence the defendant to the maximum sentence in the range. Tenn. Code Ann. § 40-35-108(c). Therefore, the issue of enhancement and mitigating factors is irrelevant, and we do not address it on appeal.

## Conclusion

Based on the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-5-