IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 7, 2003 Session

**STATE OF TENNESSEE v. DARRYL LEE ELKINS**

**Appeal by permission from the Court of Criminal Appeals
Criminal Court for Sullivan County
No. S41,530  R. Jerry Beck, Judge**

_____

**No. E2001-01245-SC-R11-CD - Filed April 29, 2003**

_____

The defendant, Darryl Lee Elkins, was tried and convicted of child rape and attempted child rape in the Criminal Court for Sullivan County.  The Court of Criminal Appeals unanimously affirmed his child rape conviction and affirmed by majority his attempted child rape conviction.  We granted this appeal to determine whether the evidence was sufficient to support both convictions.  After examining the facts and the law relevant to the issues, we hold that the evidence was sufficient to support the defendant's convictions.  We also hold that with respect to the defendant's attempted child rape conviction, the jury could properly infer from evidence of the subsequent child rape that the defendant intended to commit child rape in the first attack on the victim, and the defendant's actions in the first attack constituted a substantial step toward the completion of the offense of child rape.

**Tenn. R. App. P. 11 Application for Permission to Appeal;
Judgment of the Court of Criminal Appeals Affirmed.**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, J., joined.  JANICE M. HOLDER, J., filed a concurring opinion.  ADOLPHO A. BIRCH, JR., J., filed a concurring and dissenting opinion.

Mark H. Toohey, Kingsport, Tennessee, for the appellant, Darryl Lee Elkins.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Angele M. Gregory, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; James F. Goodwin, Assistant District Attorney General; and Mary Katharine Harvey, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

# FACTUAL BACKGROUND

In April 1997, the defendant, Darryl Lee Elkins, sexually confronted B.G.,[1] the eleven-year-old victim in this case, on two separate occasions in Kingsport, Tennessee. B.G., who was thirteen years old at the time of trial, testified that the incidents occurred while he was living at his maternal grandmother's house. B.G. testified that his mother, his brother and sister, and his aunt stayed in his grandmother's home on a regular basis. B.G. also testified that his mother's boyfriend, the defendant, also stayed in his grandmother's home on occasion.

The first sexual encounter between the defendant and B.G. occurred in early April 1997, when the defendant entered B.G.'s bedroom at night while B.G. was lying facedown on his bed in his underwear. The defendant climbed on top of B.G. and began "bouncing" on him. B.G. told the defendant to stop, but he refused. B.G. testified that he yelled for help and was assisted by his first cousin, Roy Carrico, whom B.G. claimed pulled the defendant off of him and warned the defendant never to touch B.G. again. Although B.G. could not see the defendant's face at the time of the attack, he identified the defendant by the distinctive tattoos on his arm and hands. During the attack, the defendant did not remove the underwear that B.G. was wearing. However, B.G. could not tell whether or not the defendant's pants were removed. Additionally, B.G. testified that he did not tell anyone about the incident because he was embarrassed by what the defendant had done to him.

Approximately two weeks later, the defendant entered B.G.'s room again along with B.G.'s mother, Rhonda Williams,[2] while B.G. was lying on his bed listening to music. On this occasion, while B.G.'s mother watched from a chair beside the bed, the defendant removed his pants and then B.G.'s clothes and climbed on top of B.G. B.G. testified that he felt the defendant insert his "weiner" into B.G.'s rectum. B.G. testified that the anal penetration lasted for approximately five minutes until he felt a "gooey" substance. B.G. also testified that the defendant placed a knife against his throat and threatened to kill B.G. if he told anyone what had happened. After the rape, B.G. became unable to control his bowel movements and repeatedly "soiled his pants."

For reasons unrelated to the actions of the defendant in this case, B.G. and his siblings were placed in foster care shortly after the rape. In May 1997, while in the custody of his foster mother, Gloria Martin, B.G. reported to her that he had been raped and sodomized. Ms. Martin promptly contacted the police and the social worker who was assigned to B.G. At trial, B.G. offered conflicting testimony as to what he told Ms. Louise Crum, the counselor who initially spoke with B.G. regarding the attacks. He testified on direct examination that he first told Ms. Crum that Roy Carrico was the person who raped him because "my mom told me to tell her that," but that he called Ms. Crum back after the initial visit to tell her that the defendant had actually raped him. Subsequently, on cross-examination, B.G. testified that he initially told Ms. Crum that the defendant

---

[1] It is our policy to refer to victims by their initials in child sex offense cases.

[2] Williams was tried with the defendant on the charge of facilitation of child rape. She was found guilty, but she has no appeal currently before this Court.

raped him. Additionally, when he was interviewed by the police during their investigation, B.G. offered conflicting statements concerning whether his mother was in his bedroom at the time of the rape.

Dr. John Heise testified that he examined B.G. on June 4, 1997 after B.G. was referred to his office by the Department of Human Services. Dr. Heise testified that B.G. stated at the initial examination that the defendant had twice sexually accosted him and on the second occasion had raped him. Dr. Heise testified that during B.G.'s physical examination he observed that B.G.'s rectum had lost much of its natural tone. He also stated that B.G.'s rectum was "slightly open or gaping when it should have been closed tight" and that this condition was consistent with what B.G. had told him about being anally penetrated. The result was that B.G. often experienced encopresis, an oozing involuntary leakage of feces from the rectum. Dr. Heise opined that although B.G. suffered "psychic" trauma as a result of the rape, the encopresis was most likely the result of the physical injury.

For the defense, Roy Carrico testified that he knew B.G., but was not sure that they were related. He also testified that he had known the defendant for approximately four years. Mr. Carrico refuted B.G.'s testimony by stating that he never saw the defendant attack B.G., and he denied that he ever pulled the defendant off of B.G. At the time of trial, Mr. Carrico was in custody on an unrelated charge, and he admitted that he had been convicted of aggravated assault and theft.

B.G.'s mother, Rhonda Williams, testified that she had engaged in an affair with the defendant while she was still married to B.G.'s father. She also admitted that the defendant stayed overnight with her at her mother's home. However, she claimed that by April 1997, B.G. was no longer living in his grandmother's home, but that when he did stay over, he would sleep in his grandmother's room. She also testified that she had no personal knowledge of either the attempted rape or the rape of B.G. by the defendant. She testified: "I would have killed Darryl. I would not stand by and let somebody hurt my child." In addition, Williams denied trying to coerce B.G. into claiming that it was Roy Carrico who attacked him. On cross-examination, she admitted that she had been convicted of fraud in 1995. The defendant did not testify.

At the conclusion of the proof, the trial court instructed the jury on the offenses of child rape and attempted child rape. Following deliberation, the jury returned guilty verdicts on both counts. On appeal, the Court of Criminal Appeals unanimously affirmed the defendant's child rape conviction and affirmed by majority his attempted child rape conviction. For the reasons stated herein, we affirm the Court of Criminal Appeals and hold that the evidence was sufficient to support the defendant's convictions for child rape and attempted child rape.

## ANALYSIS

*Standard of Review*

When a criminal defendant challenges the sufficiency of the evidence, "the standard for review by an appellate court is whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000) (quoting State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999)); see also Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); State v. Burns, 979 S.W.2d 276, 286-87 (Tenn. 1998). At the appellate level, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." Smith, 24 S.W.3d at 279 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). On appeal, this Court does not substitute its own "inferences drawn from circumstantial evidence for those drawn by the trier of fact." State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002).

*Child Rape Conviction*

Tennessee Code Annotated section 39-13-522(a) (1997) ("section 39-13-522(a)") defines the offense of rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Furthermore, Tennessee Code Annotated section 39-13-501(7) (1997) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, *anal intercourse*, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body . . . ." (Emphasis added). Thus, for the jury to convict the defendant of child rape, it had to find that the State proved beyond a reasonable doubt that B.G. was less than thirteen years of age and that he was sexually penetrated by the defendant.

The proof in this case was undisputed that at the time of the offense B.G. was eleven years of age. The defendant contends, however, that the evidence was insufficient to establish beyond a reasonable doubt that he sexually penetrated B.G. because the only evidence of the defendant's guilt was B.G.'s testimony. In that respect, the defendant claims that the inconsistencies in B.G.'s testimony demonstrate that he committed perjury. Furthermore, he argues that the alleged witness to the rape, Rhonda Williams, testified that the defendant did not commit the rape in her presence. In essence, the defendant argues that the jury erred in accrediting the State's evidence rather than the testimony of witnesses for the defense. We disagree.

At trial, B.G. testified that on two occasions the defendant entered his room and climbed on top of him. On the second occasion, B.G. testified that the defendant removed his pants, then removed B.G.'s clothing, then raped B.G. He further stated that the anal penetration lasted for approximately five minutes and was painful. B.G. testified that his mother watched the attack from beside his bed while the defendant held a knife to his throat and threatened to kill him if he told anyone about the rape. After the incident, B.G. testified that he was unable to control his bowel movements for a period of time.

Ultimately, in determining the defendant's guilt, the jury had to decide who to believe, B.G. or his mother. There were some inconsistencies in B.G.'s testimony, and his testimony was not entirely consistent with what he had previously told police investigators. However, at trial, B.G. steadfastly maintained that the defendant was his attacker. Furthermore, his testimony was corroborated by Dr. Heise, who claimed that the most likely cause of B.G.'s condition was that he had been anally penetrated. Conversely, Rhonda Williams, the sole witness who supported the defendant's theory that B.G. was lying had herself been convicted of fraud.

After considering the evidence, the jury returned a guilty verdict on the child rape charge, and the verdict was approved by the trial court. Clearly, the jury chose to believe B.G. over his mother. Such a verdict "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). Furthermore, a jury's verdict will not be overturned unless there are inaccuracies or inconsistencies that "are so improbable or unsatisfactory as to create a reasonable doubt of the [defendant's] guilt." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). In this case, the inconsistencies in B.G.'s testimony were not such as to create a reasonable doubt as to the defendant's guilt on the child rape charge. Viewing the evidence in the light most favorable to the prosecution, it is abundantly clear that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of child rape. We affirm the defendant's conviction for child rape.

*Attempted Child Rape Conviction*

The applicable portion of the criminal attempt statute defines criminal attempt as follows:

> **39-12-101. Criminal Attempt**. -- (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
> . . .
> (3) Acts with *intent* to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a *substantial step* toward the commission of the offense.
> (b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the *intent* to commit the offense.

Tenn. Code Ann. § 39-12-101 (1997) (emphasis added).

Again, section 39-13-522(a) defines the offense of child rape as "the unlawful sexual penetration of a victim by the defendant or the defendant by the victim, if such victim is less than thirteen (13) years of age." Thus, for the jury to find the defendant guilty of attempted child rape, it had to find that the State proved beyond a reasonable doubt that the defendant acted with the intent to sexually penetrate B.G., that the defendant took a substantial step toward doing so, and that B.G. was under the age of thirteen, or the defendant believed B.G. was under the age of thirteen.

-5-

To reiterate, it was undisputed that B.G. was eleven years old at the time of the first attack. In contending that his conviction for attempted child rape was insufficiently supported by the evidence, the defendant first argues that there was no evidence establishing the defendant's intent in the initial attack on B.G. as required by the criminal attempt statute. Conversely, the State argues that the jury could properly infer from the subsequent rape that the defendant intended to rape B.G. in the initial attack. We agree with the State.

Tennessee courts, as well as a large number of state and federal courts, have allowed the admission of evidence of subsequent crimes, wrongs, or acts when they bear on the issues of identity, intent, continuing scheme or plan, or rebuttal of accident, mistake, or entrapment. State v. Elendt, 654 S.W.2d 411, 413-14 (Tenn. Crim. App. 1983) (citing Thompson v. State, 101 S.W.2d 467, 473 (Tenn. 1937)); Graybeal v. State, 463 S.W.2d 159, 160 (Tenn. Crim. App. 1970); see also United States v. Zapata, 139 F.3d 1355, 1357 (11th Cir. 1998); United States v. Germosen, 139 F.3d 120, 128 (2d Cir. 1998); United States v. Stouffer, 986 F.2d 916, 926 (5th Cir. 1993); Hinton v. State, 632 So. 2d 1345, 1348 (Ala. Crim. App. 1993); Turner v. State, 956 S.W.2d 870, 872 (Ark. Ct. App. 1997); Glass v. State, 565 S.E.2d 500, 507 (Ga. Ct. App. 2002); People v. Jones, 778 N.E.2d 234, 238 (Ill. App. Ct. 2002); State v. Deckard, 18 S.W.3d 495, 502 (Mo. Ct. App. 2000); Powell v. State, 5 S.W.3d 369, 382 (Tex. Crim. App. 1999).

Moreover, although the question in this case does not require us to consider the admissibility of such evidence,[3] we also note, by way of example, that the plain language of Tennessee Rule of Evidence 404(b) ("Rule 404(b)") uses the phrase "*other* crimes, wrongs, or acts" rather than "*prior* crimes, wrongs, or acts." (Emphasis added). Thus, Rule 404(b) would permit the introduction of evidence of subsequent acts to establish one's intent during a prior act in appropriate cases. In determining whether to allow the admission of evidence of subsequent crimes, wrongs, or acts in a given case, trial courts should be mindful of the similarity of the offenses or acts and the proximity in time. Elendt, 654 S.W.2d at 414.

In this case, the defendant on two separate occasions entered the victim's room while B.G. lay facedown on his bed. On both occasions, the defendant climbed on top of the victim. B.G. testified that he did not tell anyone besides Roy Carrico about the first attack because he felt embarrassed about what the defendant had done to him. From these facts, coupled with the fact that the room was dark and B.G. was in his underwear, the jury could reasonably infer that the defendant's "bouncing" actions were not playful, but rather were deviant and sexual in nature. Standing alone, B.G.'s testimony that he was embarrassed about the first attack may have been insufficient to establish that the defendant intended to rape him on that occasion. However, because both attacks were similar and sufficiently close in time (two weeks), and the defendant actually raped B.G. on the second occasion, it was permissible for the jury to infer that the defendant intended to rape B.G. the first time, but was thwarted by Roy Carrico.

---

[3] In this case, the defendant was tried for both child rape and attempted child rape in the same trial. For this reason, the jury heard evidence of the subsequent rape as well as evidence concerning the first attack on the victim.

The defendant next argues that his actions in the first attack failed to constitute a "substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3). In State v. Fowler, 3 S.W.3d 910 (Tenn. 1999), this Court addressed what actions constituted a substantial step in a case of attempted statutory rape. In that case, a motorist stopped at a highway rest area that had a reputation for homosexual activity. During his stop, the defendant approached an undercover police officer and informed him that he was interested in procuring a young male with whom to have sex. In addition, the defendant wanted the boy to be willing to come live with him at the defendant's home in Florida. The officer claimed that he knew of an available boy and would deliver the boy an hour later for a $200 finder's fee. Around one hour later, the defendant met with the officer at a parking lot to make the exchange. The officer told the defendant that the boy, who was a nineteen-year-old dressed as a young boy, was fourteen. The defendant wrote the officer a check for $200, and the officer promptly arrested the defendant. A jury convicted the defendant of attempted statutory rape. Fowler, 3 S.W.3d at 911.

On appeal, this Court held that the defendant's delivery of the $200 check to the undercover officer amounted to a substantial step toward the commission of statutory rape. The Court concluded that were we to require that the defendant engage in conduct beyond the delivery of the check "as payment" for the boy, we would "create a dangerous precedent by requiring that the defendant take delivery of the boy or *actually begin some act that would approach sexual penetration.*" Id. at 912 (emphasis added).

Unlike Fowler, the actions of the defendant in the instant case *do* involve physical contact. Defendant Elkins climbed on top of B.G. and started bouncing. In Fowler, this Court agreed with the State's assertion that "only the intervention of the officers in effecting the arrest stopped the defendant from his intended purpose . . . committing statutory rape." Id. at 911. Similarly, it appears in this case that only the intervention of Roy Carrico prevented the defendant from raping B.G. on the first occasion. Accordingly, we conclude that the evidence in this case amply supports the jury's finding that the defendant took a substantial step toward the commission of child rape in his first attack on B.G.

Finally, the defendant challenges the sufficiency of the evidence by contending that the only evidence of his guilt was B.G.'s testimony. Again, the defendant claims that B.G.'s inconsistent testimony, combined with Roy Carrico's testimony that he never saw the defendant on top of B.G., demonstrates that the evidence is insufficient to support his attempted child rape conviction. Again, we disagree. It was for the jury to decide as trier of fact which witness to believe, and the jury obviously chose to believe B.G. and not to believe Roy Carrico. We affirm the conviction.

## CONCLUSION

In sum, the evidence was sufficient to support the defendant's child rape and attempted child rape convictions. We also hold that the defendant's intent to rape the victim in the first attack was properly established by evidence of the subsequent completed rape, and the actions of the defendant in the first attack constituted a substantial step toward the commission of child rape as required by

the criminal attempt statute. Accordingly, the decision of the Court of Criminal Appeals is affirmed.

Because it appears to the Court that the defendant, Darryl Lee Elkins, is indigent, costs of the appeal will be paid by the State of Tennessee.

 

 

_____
William M. Barker, Justice