# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
September 17, 2003 Session

## STATE OF TENNESSEE v. LEROY NEVILS

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-115-701        Donald P. Harris, Judge**

---

**No. M2003-00520-CCA-R3-CD - Filed February 26, 2004**

---

The defendant was convicted of DUI, second offense. He contends that 1) the evidence was insufficient, 2) the trial court erred in instructing the jury on reasonable doubt, 3) the trial court erred in instructing the jury as to the inference from refusal to submit to a chemical test, and 4) the trial court erred in failing to grant the motion to strike the enhancement count. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES, J., joined. JOSEPH M. TIPTON, J., filed a separate concurring opinion.

Joseph D. Baugh, Franklin, Tennessee, for the appellant, Leroy Nevils.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Matthew T. Colvard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Leroy Nevils, was convicted of DUI, following a jury trial.[1] The defendant waived his right to have a jury decide whether it was a second offense for sentencing purposes. The court sentenced the defendant as a DUI second offender to eleven months and twenty-nine days, suspended after service of forty-five days. The defendant's license was suspended for two years. This appeal timely followed. The defendant contends that 1) the evidence was insufficient, 2) the trial court erred in instructing the jury on reasonable doubt, 3) the trial court erred in instructing the jury as to the inference from refusal to submit to a chemical test, and 4) the trial court erred in failing to grant the motion to strike the enhancement count. The judgment of the trial court is affirmed.

---

[1]The judgment form incorrectly indicates that the defendant pled guilty.

**Facts**

During the early morning hours of March 17, 2001, at approximately 2:00 a.m., Officers Mark Swain and Kevin Cleveland were on patrol in Franklin, Tennessee. The officers observed an orange Corvette stopped at a green light. The defendant was the driver of the car. The car was partially in the intersection and was not moving. The officers waited behind the vehicle from twenty seconds to two minutes before exiting their patrol car to investigate why the car was not moving. Before getting out of the patrol car, one of the officers activated the emergency flashers on the top of the vehicle. As the officers approached the car, a group of citizens informed the officers that someone was "passed out" in the driver's seat. Swain approached from the passenger side, and Cleveland approached from the driver's side. The officers noticed that the driver appeared to be asleep or "passed out" behind the wheel. Both officers knocked on the windows in an attempt to wake the driver. After several of their attempts, the driver awoke. The defendant was asked to exit the vehicle. The defendant appeared to be having trouble opening the door and stated that it was locked. After a few seconds, Cleveland opened the door from the outside.

Before the defendant exited the vehicle, Swain noticed that the vehicle appeared to be in drive rather than park. He asked the defendant if the car was in drive, and the defendant said that the car was in park. As the defendant was getting out of the car, it began to roll. According to Swain, the defendant did not realize that the car was rolling. Swain pulled the defendant from the car and jumped inside. He was able to stop the car before it hit anything. Swain then pulled the vehicle into a nearby parking lot.

Officers Swain and Cleveland testified that the defendant had glassy eyes, slurred speech, and smelled of alcohol. When asked if he had been drinking, the defendant admitted to having one beer. Later, he said that he had three beers. The officers then began a series of field sobriety tests. Swain first administered the finger to nose test. The defendant was instructed to watch the demonstration and then perform the test. Instead of waiting for Swain to complete the demonstration, the defendant mimicked Swain while he demonstrated. While attempting to touch his nose, the defendant touched his lips instead. The defendant was unable to keep his eyes open or his head back. He was also swaying side to side while attempting the task.

Officer Swain next attempted to demonstrate the one-legged stand. Again, the defendant mimicked the officer as he demonstrated. The officer instructed the defendant to raise one leg and count from 1001 to 1030. The defendant raised one leg and quickly put it down. Swain thought the defendant looked like he was going to get sick. The defendant attempted the task again. He raised one leg and counted 1002, 1001, then put his foot down. Officer Swain then demonstrated the walk and turn task. The defendant started walking before Swain had completed his demonstration. The defendant almost fell while attempting to walk. Both officers stated that the defendant was significantly impaired. Swain testified that the defendant was the drunkest person he had ever seen in his life. The defendant was placed under arrest and charged with driving under the influence. After being arrested, he was read the implied consent form and refused to submit to a breath or blood test.

David Savage, the booking officer at the jail, testified that the defendant appeared to be intoxicated. He was unsteady on his feet, balanced himself on the counter, and had slurred speech. Savage also detected the odor of alcohol. He said that it was common for someone to be released while still impaired, if they have a safe ride home.

A couple of hours after the defendant had been arrested, Officers Swain and Cleveland saw the defendant attempting to get into his car. Apparently, he had been released from jail and was attempting to drive home. The officers approached the defendant before he got into his vehicle. Swain stated that the defendant still appeared to be intoxicated. The defendant had bloodshot, glassy eyes, and was stumbling. The officers threatened to arrest the defendant again if he drove. The defendant left with the person that had brought him back to his car.

Ronald Ennis testified that the defendant had been at a card game at his house on the night that the defendant was arrested. He stated that the defendant probably arrived around 7:00 p.m. He did not know how much the defendant had to drink or what time he left. The defendant did not appear to be impaired when he left. Normally, if anyone at the card game is too drunk to drive, they are given a ride home. Charles Dobbins was also present at the card game at Ennis's house. He did not know how much the defendant had to drink. He left the card game with the defendant. Dobbins said that he would not have ridden with the defendant if he was impaired. The defendant dropped Dobbins off about two blocks from where he was arrested. The defendant did not appear to be intoxicated when he left the card game. He and the defendant left around 1:30 or 2:00 a.m. Mac Coleman testified that he was also at the card game. He said that people were smoking and drinking at the game. He did not know how much the defendant had to drink, but he is not known as a drinker. He saw the defendant before he left, and he did not appear to be intoxicated. He said that the defendant and Dobbins probably left after 1:00 a.m.

The defendant also testified at trial. He stated that he arrived at the card game around 10:00 p.m. and that he had two beers while there. He left and dropped Dobbins off at his aunt's house. After leaving Dobbins at his aunt's house, the defendant pulled up to an intersection and waited for the light to change. He said that he did not pull out immediately after the light turned green. He then noticed that the officers behind him had activated their lights. He said that he did not drive away because he was afraid that he would be charged with evading arrest. The defendant denied that he was unconscious. He said that the officers were lying about his car not being in park and rolling away. He also denied that his car was partially in the intersection. The defendant stated that he did not understand the instructions given to him concerning the field sobriety tasks. He said that the smoke at the card game irritated his eyes and that he does not smoke. The defendant testified that David Savage was lying about his testimony. He said that Savage was not even present at the booking.

**Analysis**

I. Sufficiency of Evidence

The defendant first contends that the evidence was insufficient to support the conviction for DUI. The defendant urges us to adopt a *de novo*, or thirteenth juror, standard in reviewing the sufficiency claim in light of the fact that the record in this case was submitted via a compact disc recording. The defendant made the same argument in his previous DUI case. State v. Leroy Nevils, No. M2002-00411-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 309, *3-6 (Tenn. Crim. App., Nashville, April 4, 2003), perm. to appeal denied (Tenn. Sept. 8, 2003). We rejected the argument in that case, and we reject it again today. Id. We will apply the longstanding standard of review in our analysis.

When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This Court will not re-weigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as the trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

Officers Swain and Cleveland observed the defendant apparently "passed out" behind the wheel of his vehicle while stopped at an intersection. The defendant was unaware that his car was still in Drive as he attempted to exit the vehicle. The defendant admitted that he had been drinking. The officers testified that the defendant smelled of alcohol, had glassy eyes and slurred speech, and was unsteady on his feet. Additionally, the defendant was unable to properly complete three different field sobriety tasks administered by the officers. Both officers on the scene, as well as the booking officer at the jail, testified that the defendant appeared to be intoxicated. Approximately two hours after being arrested, the officers again came in contact with the defendant. In Officer

Swain's opinion, the defendant was still intoxicated almost two hours after being arrested. The evidence supports the conviction. This argument is without merit.

II. "Reasonable Certainty" Used in Jury Instructions Rather Than "Moral Certainty"

The defendant next contends that the trial court erred in charging the jury as to reasonable doubt. The trial court charged the jury concerning reasonable doubt with the following pertinent language: "While absolute certainty of guilt is not demanded by the law to convict of any criminal charge, reasonable certainty is required." The court used "reasonable certainty" in defining "presumption of innocence and burden of proof" and in defining "circumstantial evidence." The defendant argues that the use of the term "reasonable certainty" as opposed to "moral certainty" reduces the burden of proof to a degree inconsistent with due process. This argument was rejected in the defendant's previous DUI case, and we reject it again today. Nevils, 2003 Tenn. Crim. App. LEXIS 309, at *19-21. As we stated in that case:

> Due process requires a defendant be found guilty beyond a reasonable doubt. However, in a jury charge, there is no specific form required as to defining what reasonable doubt is. The United States Supreme Court stated, "Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury (citations omitted).'" Victor v. Nebraska, 511 U.S. 1, 5, 114 S. Ct. 1239, 1243, 127 L. Ed. 2d 583 (1994).
>
> Furthermore, while Tennessee Pattern Jury Instruction 2.03 includes the language "moral certainty" in the context of reasonable doubt, Tennessee Pattern Jury Instruction 2.03(a) provides alternative language that does not use the term "moral certainty" and has continuously withstood challenges to its constitutionality. We conclude the trial court's use of the term "reasonable certainty," as opposed to "moral certainty," as a prerequisite to finding guilty beyond a reasonable doubt, does no injustice to due process.

Id. This issue is without merit.

III. Inference From Refusal to Submit to Chemical Test

The defendant contends that the trial court's instruction to the jury regarding the defendant's refusal to submit to a chemical test violated his constitutional rights. The trial court instructed the jury in pertinent part:

> In this case, there was evidence the defendant was requested to take a test to determine the alcohol content of his blood. When there is evidence a person has been

requested to take such a test and the consequences of refusal have been explained to him or her, the jury may consider a refusal as evidence of the defendant's belief that submitting to the test would have produced unfavorable results. You are never required to make this inference. It is for the jury to determine, after a consideration of all the evidence, whether to make the inference which the law permits, the correctness of the inference and weight is to be given to such evidence.

The defendant argues that such an instruction, allowing for a jury to make inferences, is erroneous. In support of his argument, he relies on United States v. Leary, where the Supreme Court stated that an inference is "'irrational' or 'arbitrary' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U.S. 6, 36, 89 S. Ct. 1532, 1548, 23 L. Ed. 2d 57, 82 (1969). We rejected this argument in the defendant's first DUI case, and we reject it again today. Nevils, 2003 Tenn. Crim. App. LEXIS 309, at *21-22. "[W]hen there is evidence that a defendant has refused to submit to a blood alcohol test after being advised of the consequences of a refusal, the trial court should instruct the jury that it may consider the refusal as probative of guilt." State v. Bobby J. Young, No. M1998-00402-CCA-R3-CD, 1999 Tenn. Crim. App. LEXIS 1241, *12-13 (Tenn. Crim. App., Nashville, Dec. 15, 1999), perm. to appeal denied (Tenn. July 17, 2000) (quoted in Nevils, 2003 Tenn. Crim. App. LEXIS 309, at *22). This issue is without merit.

IV. Enhancement to Second Offense Violates Ex Post Facto Provisions

The defendant lastly contends that the trial court erred by not granting his motion to strike the enhancement count of the indictment. The DUI offense in the instant case occurred on March 17, 2001. The defendant was arrested for another DUI on March 30, 2001. The defendant was convicted for the March 30 DUI on December 12, 2001. He was found guilty of the March 17 DUI on July 9, 2002. The defendant argues that enhancing the conviction to second offense violates the ex post facto provisions of the United States and Tennessee Constitutions, because the instant DUI offense occurred before the DUI offense in the first conviction.

We look to Tennessee Code Annotated section 55-10-403(a)(3) to determine whether the defendant should have been considered a multiple offender for purposes of determining the proper punishment. The section provides as follows:

> For purposes of this section, a person who is convicted of a violation of § 55-10-401 shall not be considered a repeat or multiple offender and subject to the penalties prescribed in subsection (a), if ten (10) or more years have elapsed between such conviction and any immediately preceding conviction for a violation. If, however, a person has been convicted of a violation of § 55-10-401 within ten (10) years of the present violation, then such person shall be considered a multiple offender and is subject to the penalties imposed upon multiple offenders by the provisions of subsection (a). If a person is considered a multiple offender under this subdivision, then every conviction for a violation of § 55-10-401, within ten (10)

-6-

years of the immediately preceding violation shall be considered in determining the number of prior offenses . . . .

Tenn. Code Ann. § 55-10-403(a)(3). The defendant's first conviction for DUI occurred on December 12, 2001. The instant conviction occurred within ten years of that conviction on July 9, 2002. It is of no consequence that the actual offense occurred prior to the first conviction. "[T]he defendant may be prosecuted for DUI, second offense, even though his first conviction occurred after the alleged DUI offense in the present case occurred." State v. Bowen, 67 S.W.3d 826, 828 (Tenn. Crim. App. 2001). The enhanced sentence was properly imposed. This argument is without merit.

## Conclusion

Based on the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE