# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 7, 2015 Session

## STATE OF TENNESSEE v. ELIOT RUSSELL

### Appeal from the Criminal Court for Shelby County
### No. 1302746    John Wheeler Campbell, Judge

_____

### No. W2014-01212-CCA-R3-CD  -  Filed October 6, 2015

_____

The defendant, Eliot Russell, was convicted of one count of attempted rape of a child, a Class B felony, and one count of aggravated sexual battery, a Class B felony.  The trial court imposed twelve-year sentences for each conviction and ordered the sentences to be served consecutively for an effective sentence of twenty-four years.  On appeal, the defendant argues that the evidence is insufficient to sustain his conviction for attempted rape of a child and that the trial court erred in imposing a twenty-four year sentence. Following our review of the record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J. and ROGER A. PAGE, J., joined.

Joseph A. McClusky (on appeal) and Terita Hewlett-Riley and Kevin Henson (at trial), Memphis, Tennessee, for the Appellant, Eliot Russell.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy Weirich, District Attorney General; and Abby Wallace, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

This case arose after a Shelby County Grand Jury indicted the defendant for one count of rape of a child and one count of aggravated sexual battery. The victim testified that she was born on August 10, 1998, and that she was fifteen years old and in the tenth grade at the time of trial. The victim first met the defendant when she was very young. At the time, the defendant was dating the victim's mother, and the victim was living with her mother and her younger sister. The defendant eventually moved in with the family, and they lived in the Stonehenge Apartments. The victim and her sister viewed the defendant as a stepfather, and the victim testified that her initial relationship with the defendant was positive. The defendant would take the victim on outings, and the family would go out to eat together at restaurants.

When the victim was in the fourth grade, her relationship with the defendant began to change. She testified that she was attending school at Sheffield Elementary and living in the Stonehenge Apartments when the defendant began to sexually assault her. In the first instance of sexual abuse, the victim and the defendant were playfully wrestling on the floor of their living room. The victim's mother was at work, and the victim's younger sister was in the back room of the apartment. The defendant asked the victim to pull her pants down, and she lowered her pants and underwear. The two were lying on the couch together, and the defendant was behind the victim with his chest touching her back. The defendant placed his penis "somewhere" around the victim's privates, but she did not remember if his penis went inside of her body or remained outside of her body. She asked the defendant if he was "done," and the defendant did not respond. The victim got up from the couch and went into the bathroom, where she wiped her private parts. She testified that her private parts felt "wet" because the defendant "had stuck his stuff somewhere in [her]." She did not recall if the defendant penetrated her front or back private part. She then returned to the living room and asked the defendant why he was laughing. After the assault, the victim attended the defendant's niece's birthday party. She specifically recalled that this incident occurred on December 3, although she did not state the year.

The family later moved to the Flairwood Apartments, where the sexual abuse continued. At the time, the victim was twelve years old and was in the seventh grade at Oakhaven. The victim recalled an incident that occurred on a weekend morning at the Flairwood Apartments. The victim's mother was at the store, and the defendant woke her up and instructed her to pull her pants down before her mother returned. The victim was "[b]ent over on the bed," and the defendant anally sexually assaulted her, which caused the victim pain. She testified, however, that the defendant did not put his private part inside of her body. The victim stated that she later asked the defendant why he was doing

these things to her, and he replied that "he didn't want to cheat [her] mommy with" anyone else.

At the Flairwood Apartments, the defendant would sometimes sexually assault the victim when she asked him for things. During one incident, the victim was "on punishment," and she asked if she could use the defendant's phone. The defendant anally sexually assaulted her in exchange for the phone. She was standing upright and was bent over facing the door of the kitchen "so we could see if somebody [was] coming." The victim saw sperm come out of the defendant's penis, and he deposited the sperm in the trash can. During another incident, the victim asked the defendant for some "school pants." He took her to acquire the clothes, and he took her to his bedroom when they returned from shopping, where he sexually assaulted her. The victim testified that the defendant responded similarly on a separate occasion when she asked him to take her to IHOP.

The defendant continued to abuse the victim when the family moved to the Oakwood Meadows Estates. The victim recalled that she was thirteen years old and in the eighth grade when she lived at the Oakwood Meadows Estates. The victim testified that at Oakwood Meadows Estates, she used "to get raped." The victim testified that in one incident, she was in her room when the defendant instructed her sister and her cousin to go to check the mailbox. Once the girls left, the defendant told the victim "to hurry up before they come back." The victim pulled down her pants, and the defendant "put his stuff in [her] butt." He told the victim that he was anally penetrating her because he did not want anyone "to notice about [her] private."

A second incident occurred when the victim had missed school due to illness. The defendant dropped the victim's mother off at work, and the victim was asleep in her room. The defendant entered the room, the victim pulled her pants down, and the defendant "put his stuff in [her] butt again." On a third occasion at Oakwood Meadows Estates, the defendant touched the outside of the victim's vagina with his hands. The victim estimated that she was thirteen years old at the time of these assaults.

On cross-examination, the victim clarified her testimony regarding the nature of the penetration. When describing the assaults, the victim testified that the defendant "put it in [her] butt." She explained that the defendant would not place his penis inside of her anus but that he would "just bump his stuff to it." She testified that the defendant would place his penis on her anus "and then he'll just bump into it[,] but he would never go inside."

The victim and her younger sister testified that the defendant treated the victim differently than her sister. The victim would receive more gifts and get to "go more

3

places" than her sister. The victim was rarely disciplined by the defendant, while her sister frequently got into trouble. The victim's sister testified that the defendant would purchase things for the victim but not for her. The defendant told the victim's younger sister that the victim received gifts "[b]ecause she was doing good, she earned it." The victim's sister stated that she frequently got into trouble with the defendant but that the victim did not. She testified that the defendant would take the victim places that he would not take her, even when she asked to go. She recalled that the defendant and the victim would be alone at times in the victim's room and in the victim's mother's room. When the victim's sister would attempt to enter the rooms, the defendant would send her downstairs. The victim's sister testified that the defendant and the victim were alone in rooms frequently and that the doors were closed.

Eventually, the victim disclosed the abuse to her mother. The victim and her cousin had been in a fight, and her cousin hit her in the eye. The victim was at the hospital with her mother after the fight, and the two began discussing the victim's mother's coursework for nursing school while waiting for the doctor. The subject matter of the coursework involved sexually transmitted diseases ("STDs"). The victim asked her mother if she ever had an STD, and her mother replied that she had contracted an STD from the defendant. Upon hearing this, the victim became afraid and told her mother about the abuse. The victim's mother called police, and the victim later spoke with police and a forensic interviewer at the Center for Child Advocacy ("CAC").

Mehdi Farzam, a patrol officer with the Memphis Police Department ("MPD"), testified that he responded to a sexual assault call at Methodist South. The victim's mother had contacted police, and Officer Farzam spoke with her. She told Officer Farzam that her daughter informed her that she had been forced since the fourth grade to have sex with the same man who gave her mother an STD. Officer Farzam did not recall if he spoke with the victim. He explained that as a patrol officer, he was not trained to handle the questioning of a child victim of sexual assault.

Lieutenant Carl Ray of the MPD testified that at the time of the incident, he was assigned to the sex crimes unit and worked out of the CAC. He was assigned to the victim's case, and he scheduled a forensic interview and medical examination for the victim. During the interview, the victim alleged that she was being sexually abused by her mother's boyfriend. Lieutenant Ray also interviewed the defendant, and he agreed that the defendant willingly participated in the interview and willingly submitted a DNA sample.

Dr. Karen Lakin testified as an expert in pediatrics, child maltreatment, and sexual assault forensic examinations. She stated that the last reported sexual contact between the victim and the defendant was in February of 2012 and that the medical examination

4

was not administered until June of 2012. Due to the period of time between the sexual contact and the examination, there was not an attempt to collect DNA from the victim. Dr. Lakin testified that there were no visible injuries observed on the victim and that the findings of the examination "did not support nor discredit the possibility that a sexual assault had occurred." Dr. Lakin explained that injuries to the vaginal and anal area were capable of healing quickly and that she would not have expected to find evidence of physical injuries based upon the length of time between the abuse and the examination. She testified that it was uncommon for young children and adolescents to have visible injuries after a sexual assault. The victim was tested for the presence of STDs, and the tests were negative. Dr. Lakin testified that the negative test did not indicate a lack of sexual contact between the victim and the defendant, as STDs were not always transmitted during unprotected sexual intercourse.

At the conclusion of the proof, the trial court required the State to make an election of offenses. The State elected the incident in the victim's bedroom at the Flairwood Apartments for the charge of rape of a child and the incident on the couch at the Stonehenge Apartments for the charge of aggravated sexual battery. After deliberating, the jury convicted the defendant of the lesser included offense of attempted rape of a child in Count 1 and aggravated sexual battery as charged in Count 2.

At the sentencing hearing, several relatives of the defendant testified on his behalf. The family members asserted that the defendant was a devoted family member who was not guilty of the crimes that he was accused of committing. The family asked the court to impose a lenient sentence. The defendant testified that the evidence at trial did not "add[] up," and he asserted that he received a "one sided" trial predicated "off of hearsay, just hearsay." The defendant insinuated that the victim's mother was responsible for convincing the victim to accuse him of rape. When asked if he had anything to say to the victim, the defendant testified, "[Y]ou know better and your mom knows better."

The trial court found that the defendant was a Range I offender for both convictions. The court found that enhancement factor one, the defendant's previous criminal history, applied based upon the defendant's prior felony drug conviction. *See* T.C.A. § 40-35-114(1) (2010). The court found that enhancement factor eight, failure to comply with conditions of a sentence involving release into the community, applied because the defendant previously violated his federal probation. *See id.* at (8). The court found that enhancement factor fourteen, the abuse of a position of public or private trust, applied, due to the nature of the relationship between the mother of the victim, the victim, and the defendant. *See id.* at (14). The court gave "great weight" to all of the enhancement factors. The court also found that a mitigating factor was that the defendant's conduct neither caused nor threatened serious bodily injury. *See* T.C.A. §

5

40-35-113(1). The trial court imposed twelve-year sentences for each of the defendant's convictions.

The trial court next considered whether to impose concurrent or consecutive sentencing. The court found that the defendant was convicted of two or more statutory offenses involving sexual abuse of a minor. T.C.A. § 40-35-115(b)(5). The court noted that the time span of the defendant's undetected sexual activity was "great," as the abuse occurred over several years and began when the victim was nine years old. The court found that the defendant and victim had a "very close" and "very trusting" relationship and that the defendant would give the victim gifts "in exchange for sexual access" to the victim. Citing to the victim's handwritten letter to the court, the court observed "that there is a strong conflicted feeling in the victim about this conduct, that she is torn by having to go through the sexual conduct, but also has love for her mother's former boyfriend." The court found that the victim "has love for [the defendant] and is very conflicted about this whole thing." The court found that consecutive sentencing was appropriate and imposed an effective twenty-four-year sentence.

The defendant filed a motion for new trial, which the trial court denied. He filed a timely notice of appeal, and we will now consider his claims.

## ANALYSIS

On appeal, the defendant argues that the evidence is insufficient to support his conviction for attempted rape of a trial. He also argues that the trial court erred when it imposed the maximum sentence for each conviction and ordered the sentences to be served consecutively.

### I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to sustain his conviction for attempted rape of a child. He contends that there is no proof to show that he intended to sexually penetrate the victim or that he took a substantial step toward penetrating the victim. Citing to *State v. Elkins*, 102 S.W.3d 578, 584 (Tenn. 2003), he also contends that this court should find that because he did not sexually penetrate the victim in subsequent assaults that he lacked the intent to sexually penetrate her during the incident that led to his conviction.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal,

"'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Tennessee Code Annotated section 39-13-522(a) defines rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Sexual penetration includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense: . . . Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3).

Viewing the evidence in the light most favorable to the State, the victim's testimony established that the defendant made the victim undress, put his penis on the victim's anus, and "bumped" his penis against her anus without penetrating her when she was twelve years old. This caused the victim pain. The defendant later told her that he did not want to cheat on the victim's mother with anyone but the victim and that he sexually assaulted her anally because he did not want anyone to notice the abuse. The defendant treated the victim more favorably than her younger sister, as he would purchase gifts for the victim and take her places but would not do the same for her younger sister. The victim's sister testified that the defendant told her that the victim had "earned" the gifts she received as a result of her good behavior. She also testified that the victim and the defendant would be alone together in their bedrooms. As to the defendant's argument that a lack of penetration during the later sexual assaults was demonstrative of his intent during the previous incident, the fact that a subsequent rape

can be evidence of intent does not mean that the absence of a subsequent rape negates intent in a prior sexual assault. The defendant's intent was a question for the jury. There was ample evidence from which a trier of fact could find that the defendant acted with the intent to sexually penetrate the victim and took a substantial step toward doing so. We conclude that the defendant is not entitled to any relief.

## II. Sentencing

The defendant argues that the trial court abused its discretion by imposing a twenty-four year sentence. He contends that the trial court gave undue weight to several enhancement factors and that consecutive sentencing was not appropriate in this case.

This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The misapplication of an enhancement or mitigating factor by the trial court "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. A sentence imposed by the trial court that is within the appropriate range should be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute." *Id.*

After the trial court establishes the appropriate range of the sentence, the court must consider the following factors to determine the specific length of the sentence: (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in his own behalf about sentencing. T.C.A. § 40-35-210(a), (b)(1)-(7).

The defendant contends that the trial court incorrectly applied enhancement factor eight because there was no proof that he violated the conditions of his supervised release and that the court placed undue weight on enhancement factor one. The presentence

report indicates that there was a probation violation entered on May 18, 2006, that "shows not yet disposed on the N.C.I.C. check." Even if the trial court misapplied this enhancement factor, it does not invalidate the defendant's sentence. *See Bise*, 380 S.W.3d at 706; *Carter*, 254 S.W.3d at 345. The trial court properly considered several other enhancement factors, and the record supports the findings of the trial court. We conclude that the trial court did not abuse its discretion in imposing a sentence at the top of the defendant's range for each of his convictions.

If a defendant is convicted of multiple offenses, the trial court must determine whether the sentences should be served concurrently or consecutively. A trial court has the ability to impose consecutive sentences if it finds by a preponderance of the evidence that the defendant falls into one of seven categories, including that "the defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor." T.C.A. § 40-35-115(b)(5). In order to impose consecutive sentences, the trial court must consider "the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." *Id.* A trial court's decision to impose consecutive sentencing is also reviewed under an abuse of discretion standard with a presumption of reasonableness. *State v. Pollard*, S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable, and absent an abuse of discretion, upheld on appeal." *Id.* at 862.

Here, the defendant was convicted of two statutory offenses involving the sexual abuse of a minor. The defendant concedes that the first two factors in Tennessee Code Annotated section 40-35-115(b)(5) are applicable; however, he contends that the trial court did not consider the third factor and that there was no evidence that the victim suffered extensive residual, physical, or mental damage. We agree with the defendant regarding the applicability of the first two factors, as the record supports the trial court's findings that the sexual abuse went undetected for several years and that the victim and defendant shared a close and trusting relationship. Contrary to the defendant's assertion, however, it appears that the trial court appropriately considered the nature and scope of the sexual acts. The trial court found that the abuse appeared to be premised upon an exchange of gifts in return for sexual access to the victim. As to the fourth factor, the trial court found that the statement indicated that the sexual abuse left the victim greatly conflicted, as she was torn between suffering the abuse and still having feelings of affection for the defendant. The trial court found that the letter supported the inference that the victim suffered mental damage as a result of the abuse; in any event, not all of the aggravating factors must be present in order for the trial court to impose consecutive sentences. *State v. Doane*, 393 S.W.3d 721, 738 (Tenn. Crim. App. 2011). We conclude

that the record amply supports the imposition of consecutive sentences and that the trial court did not abuse its discretion in ordering the defendant to serve his sentences consecutively. The defendant is not entitled to any relief.

## CONCLUSION

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE