IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 1, 2020

**STATE OF TENNESSEE v. TERRILL J. WHITELOW**

**Appeal from the Circuit Court for Dyer County**
**No. 17-CR-278B     R. Lee Moore, Jr., Judge**
_____

**No. W2020-00598-CCA-R3-CD**
_____

Defendant, Terrill J. Whitelow, was indicted by the Dyer County Grand Jury on three counts: Count 1, attempted carjacking; Count 2, aggravated burglary; and Count 3, evading arrest. After a trial, the jury found Defendant guilty as charged on Counts 2 and 3. Defendant received an effective sentence of ten year's incarceration. Defendant filed a motion for new trial in which he argued the evidence was insufficient to support his convictions. The trial court denied the motion for new trial. After a thorough review of the record, we affirm the judgments of the trial court but remand the matter to the trial court for entry of a judgment disposing of Count 1 of the indictment.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Hal Boyd, Tiptonville, Tennessee, for the appellant, Terrill J. Whitelow.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Deputy Attorney General; Danny Goodman, Jr., District Attorney General; and Timothy J. Boxx, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural Background*

On May 21, 2107, around 11:00 p.m., Officer Roger Anderson received a dispatch regarding a possible burglary in process at 2005 Joshua Loop in Dyersburg. Officer

Anderson arrived on the scene at the same time Officer Putnam[1] arrived. Officer Anderson observed a black SUV backed into the driveway. Officer Putnam proceeded to the front door, and Officer Anderson went around to the back of the house. Upon his arrival at the back, Officer Anderson observed three black males jump over the privacy fence and run down the hill. Officer Anderson identified himself as a police officer and ordered the men to stop. Two of the men stopped but one did not and continued to flee. Officer Putnam arrived and took control of the two stopped men, and Officer Anderson searched for the third, later identified as Defendant. Officer Funderburk[2] was in the area and radioed to Officer Anderson that he saw Defendant on the hill and that the Defendant lay down in the grass in an attempt to avoid detection. Officer Funderburk led Officer Anderson to the Defendant's location, and Officer Anderson took Defendant into custody. Lying next to Defendant, Officer Anderson found a set of keys; also found in the vicinity were bag of marijuana and a gun. After conferring with other officers on the scene, Officer Anderson charged Defendant with aggravated burglary and evading arrest. Officer Anderson later spoke to Dr. Norman Weinstein, the owner of the house, who confirmed that his house had been broken into.

Sergeant Logan Abbott arrived at the scene and saw that the backdoor to the house was open. He called for assistance to make sure that no one else was in the house. Sergeant Abbot saw a large television sitting in the floor of the kitchen and photographed it, as it was an odd place for a television.

Dr. Weinstein maintained a residence at 2005 Joshua Loop and another residence in Arizona. Dr. Weinstein was travelling back to Dyersburg at the time of the burglary. He arrived back at his house in the early morning hours of May 22, 2017, after he was picked up at the airport by his friend, Ralph Balfment[3]. Mr. Balfment was staying at Dr. Weinstein's house during Mr. Balfment's divorce proceedings and was the only person that had Dr. Weinstein's permission to be in the house. Upon arrival at his house, Dr. Weinstien found that his house had been broken into. His house was in general disarray, and his television had been taken off the wall and was lying on his kitchen floor. Dr. Weinstein found nothing missing from his home. Dr. Weinstein did not know Defendant, and Defendant did not have his permission to enter his house.

Defendant did not testify or present any proof.

---

[1] Officer Putnam did not testify at trial and his first name is not in the record.

[2] Officer Funderburk did not testify at trial and his first name is not in the record.

[3] Mr. Balfment's last name is spelled multiple ways throughout the record. We will use Balfment as that is the spelling used in the transcript of the trial.

The jury found Defendant guilty of aggravated burglary and evading arrest.[4]  The record does not reflect the disposition of Count 1 of the indictment.  Defendant received an effective sentence of ten years.  Defendant filed a motion for new trial, which the trial court denied.  It is from that denial that Defendant now appeals.

## *Analysis*

Defendant argues that the evidence is insufficient to support his aggravated burglary conviction.[5]  Specifically, Defendant argues that the State failed to establish that Defendant was in the house or that he jumped the fence in the backyard.  The State argues that Defendant's conviction is sufficiently supported by the evidence.  We agree with the State.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence.  A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt.  *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).  The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction.  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt.  *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom."  *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).  As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  We may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence."  *Matthews*, 805 S.W.2d at 779.  Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts.  *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).  "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'"  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

---

[4] There is nothing in the record that reflects the disposition of Count 1.  A complete judgment form for each count of the indictment is required by law.  *See State v. Berry*, 503 S.W.3d 360, 364 (Tenn. 2015) (Order).

[5] Defendant does not appeal his evading arrest conviction.

A person commits an aggravated burglary when, without the effective consent of the property owner, he enters a habitation with intent to commit a felony, theft, or assault. T.C.A. §§ 39-14-402(a)(1), -403(a). A habitation includes "any structure . . . which is designed or adapted for the overnight accommodation of persons." T.C.A. § 39-14-401(1)(A). "[F]light and attempts to evade arrest are relevant as circumstances from which, when considered with other facts and circumstances in evidence, a jury can properly draw an inference of guilt." *Dorantes*, 331 S.W.3d at 388 & n.16 (quoting *State v. Zagorski*, 701 S.W.2d 808, 813 (Tenn. 1985)). "In the absence of an 'acceptable excuse,' a jury may reasonably and legitimately infer that by breaking and entering a building containing valuable property, a defendant intends to commit theft." *State v. Ingram*, 986 S.W.2d 598, 600 (Tenn. Crim. App. 1998) (internal citations omitted). The fact that a defendant leaves a home empty handed is insignificant; what matters is his intent when he entered his home. *See State v. Henry*, No. M2010-01175-CCA-R3-CD, 2011 WL 1441540, at *6 (Tenn. Crim. App. Apr. 14, 2011), *perm. app. denied* (Tenn. July 13, 2011).

Here, Dr. Weinstein testified that he did not know Defendant or give him permission to be in his house. When Dr. Weinstein's arrived at his house, it was in disarray and his television was taken off the wall and was lying on the floor of his kitchen near the backdoor. The backdoor was open when officers arrived and no one was in the house. Officers observed three men run through the backyard and jump the fence. Two of the men stopped and were apprehended, and the third man continued to flee. Defendant was observed nearby and attempted to hide from officers. Officer Anderson was guided to Defendant's location and arrested him. When reviewing the evidence in the light most favorable to the State, we conclude that a rational jury could have found beyond a reasonable doubt that Defendant entered Dr. Weinstein's house without consent and with the intent to commit theft. Defendant is not entitled to relief

### *Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed. However, because the record does not contain a judgment form disposing of Count 1 of the indictment, we remand to the trial court for entry of a judgment for Count 1.

_____
TIMOTHY L. EASTER, JUDGE

- 4 -