# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs April 13, 2010

## STATE OF TENNESSEE v. BRYAN WILLIAMS

**Appeal from the Criminal Court for Shelby County**
**No. 07-03782     James C. Beasley, Jr., Judge**

---

**No. W2009-00306-CCA-R3-CD  - Filed September 3, 2010**

---

The defendant, Bryan Williams, was convicted of one count of second degree murder, a Class A felony; one count of attempted second degree murder, a Class B felony; and one count of reckless endangerment, a Class E felony.  He was sentenced to twenty-three years for the Class A felony, ten years for the Class B felony, and two years for the Class E felony. All sentences were ordered to run consecutively, for a total effective sentence of thirty-five years.  On appeal, he argues that the evidence was insufficient to support his convictions and that the trial court erred in failing to declare a mistrial following the testimony of one witness.  After careful review, we affirm the judgments from the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Ruchee J. Patel (on appeal) and Juni Ganguli (at trial), Memphis, Tennessee, for the appellant, Bryan Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; William L. Gibbons, District Attorney General; and Greg Gilbert and Damon Griffin, Assistant District Attorneys General, for the  appellee, State of Tennessee.

### OPINION

This case involves the shooting death of the victim, Julius Calhoun, while he was a passenger in Brittany Bond's car at a gas station in Memphis.  Earlier in the day on January 10, 2007, Bond, Zaquesha Morrow, and the defendant argued over the use of Bond's automobile.  Bond drove to the gas station and was walking to prepay for her gasoline when a red automobile carrying the defendant and Morrow arrived.  Morrow physically confronted

Bond, and the defendant was observed to have a gun. The victim and Taurus Bailey were sitting in Bond's automobile with three children when the defendant opened the door, asked the victim "what's up now," and began firing. Bailey testified that he tried to cover his son in the car when he heard the three gunshots. He saw the victim slump over and realized later that he too had been shot. Bailey also testified that he was certain he saw more than two guns during the shooting, but he was uncertain as to the number of shots fired because he was trying to protect his son. Angela Gilliam, also a passenger in the car with the victims, saw Morrow physically assault Bond and saw the defendant approach the back passenger side of the car where the victim was sitting. She did not see the actual shooting but testified that the defendant was the only one by the car door. She fled the car after the first gunshot and was able to pick out both Morrow and the defendant from a photographic lineup.

The defendant was convicted by a jury of second degree murder of Julius Calhoun, attempted second degree murder of Taurus Bailey, and reckless endangerment of the children in the automobile. The trial court sentenced the defendant to twenty-three years for the second degree murder, ten years for the attempted second degree murder, and two years for the reckless endangerment. The trial court ordered the sentences to run consecutively, for a total effective sentence of thirty-five years.

Analysis

On appeal, the defendant argues that the evidence was insufficient to support his convictions. Specifically, the defendant contends that the proof of the shooter's identity was insufficient to support the jury's verdict that he was one of the shooters.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

At trial, Taurus Bailey testified that he locked the doors to the automobile when he saw that the defendant was armed at the gas station. Bailey told the victim not to unlock the doors, but the victim told him nothing would happen and unlocked his door. The defendant opened the door, asked "what's up now," and fired three shots at the victim as Bailey tried to cover his son. Bailey testified that he saw the defendant shoot at the victim. Bailey saw the victim slump over and later realized that he too had been wounded. Bailey testified that he saw other guns during the shooting and that it was possible there were more shots fired. Police officers recovered two .380 caliber shell casings by the front passenger side of the automobile and a .40 caliber shell casing in the backseat of the car. A Tennessee Bureau of Investigation firearms expert testified that two .40 caliber bullets were taken from the victim's body and one .380 bullet was recovered from Bailey's body. Brittany Bond testified that she saw the defendant get out of a red automobile at the gas station and that she heard four or five shots fired as a group of people surrounded them. Angela Gilliam, who was a passenger in the automobile with Bailey and the victim, testified that she saw the defendant get out of the red automobile at the gas station, approach the right side of the car, and open the door where the victim was seated. She said that she then heard a gunshot from the right side of the car. She said the defendant was the only person standing by the car door, but she did not see the shooting. She fled the car after she heard the gunshot. Morrow testified at a preliminary hearing that two other co-defendant's were responsible for the shooting.

This evidence is sufficient to support the defendant's convictions for the murder of Julius Calhoun, the attempted murder of Taurus Bailey, and reckless endangerment for firing a deadly weapon which placed the children in the automobile in danger of death or serious bodily injury. The jury resolved any conflicts in the evidence against the defendant. Bailey testified specifically that he saw the defendant open the door of the car and shoot his handgun three times at the victim. The evidence was sufficient to show that the defendant was at such a close distance when he discharged his weapon that a rational trier of fact could determine that he intended to kill the victim and that his actions caused the injuries to Bailey, in

addition to putting the others in the car in danger of death or serious bodily injury. The proof demonstrated overwhelmingly that the defendant was the gunman firing at the victim and inside the car. The proof was more than legally sufficient to support the convictions.

Next, the defendant argues that the trial court erred by failing to declare a mistrial following Mr. Bailey's testimony that he saw the defendant prior to trial. The State argues that because there was no miscarriage of justice, the trial court properly denied the motion.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. *State v. Smith*, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002). The burden of establishing the necessity for mistrial lies with the party seeking it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). No abstract formula should be mechanically applied in making this determination, and all circumstances should be taken into account. *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993).

During cross-examination, Mr. Bailey was asked if he had seen the defendant since the events that are the basis of this case. Mr. Bailey testified that he had seen the defendant in the courtroom and that the defendant covered his face and remarked that he did not want to go to trial. The defendant requested a mistrial at the conclusion of Mr. Bailey's testimony.

The trial court denied the request for a mistrial and found that the testimony was not prejudicial and did not affect the defendant's rights to a fair trial. The defendant did not request a curative instruction. As previously stated, the proof at trial established that the defendant was involved in the commission of the crime. The testimony did not involve a prior bad act or an admission on the part of the defendant. The statement did not result in a miscarriage of justice, and the trial court properly denied the motion for a mistrial.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-4-