IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2014

**STATE OF TENNESSEE v. DERICK D. ARMSTRONG**

**Appeal from the Criminal Court for Knox County**
**No. 97491      Steven Wayne Sword, Judge**

_____

**No. E2014-00888-CCA-R3-CD - Filed February 9, 2015**

_____

The defendant, Derick D. Armstrong, was convicted of one count of attempted voluntary manslaughter, a Class D felony, and one count of employment of a firearm during the attempted commission of a felony, a Class C felony. On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions. After thoroughly reviewing the record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Derick D. Armstrong.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Charme Allen, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Facts and Procedural History**

This case arose when the defendant shot the victim several times. The victim testified that on May 30, 2010, Bear Hines contacted him to see if he was interested in purchasing a set of rims for the tires of his vehicle. The victim drove to Catalpa Avenue to meet with Mr.

Hines. Mr. Hines was sitting in the passenger's seat of a vehicle, and the victim approached him to discuss the tires. While the victim was speaking with Mr. Hines, the defendant, with whom the victim was acquainted slightly, emerged from a house and began shouting at the victim, "Where the money at?" The victim explained that he was talking to Mr. Hines, and the defendant continued to shout at the victim and ask him where the money was.

The victim became upset with the defendant and began shouting back at him, and the defendant pulled out a gun. After seeing the gun, the victim began to return to his car, at which point the defendant opened fire. The victim testified that when the defendant began firing, he was standing in a driveway near a gray house. The victim was shot in his arm and abdomen. Realizing that he was wounded and bleeding, the victim attempted to start his car to escape, but the car would not start. The victim believed that a bullet struck the radiator of the car, disabling it, and the hood of his vehicle suffered bullet damage. After the car would not start, the victim ran to the back of the car to shield himself from the gunfire.

The victim believed that he called 911 while hiding behind his car. A man whom the victim knew as "LA" arrived in a pickup truck, and the victim got into the truck. LA offered to take the victim to the hospital, and the victim told LA to drive to the fire department because the fire department had an ambulance and EMT equipment. LA drove to the fire department, where he told a police officer what happened.

Shanese Moore testified that she was visiting her grandparents, who lived on Catalpa Avenue, when she heard "two or three popping noises." She rushed outside and saw the defendant shooting at another individual. She called 911 and told the operator that "[s]omebody's been shot." She provided a description of the shooter to the operator and stated that he "ran up the driveway." Ms. Moore noticed that the defendant was at the end of the driveway belonging to a gray house, and she observed him shoot "maybe two more times" before running back up the driveway. She again called 911 after she witnessed the bloodied victim getting into a truck.

Investigator Lynn E. Clemons, Jr., of the Knoxville Police Department testified that he initially was dispatched to Catalpa Avenue but was redirected to the fire station where the victim was located. When Investigator Clemons arrived at the fire station, the victim was on a stretcher being placed in an ambulance and appeared to be in a great deal of pain. Investigator Clemons briefly spoke with the victim, who told him that "Little Derick" shot him. The use of the defendant's first name helped Investigator Clemons in identifying the defendant as a suspect in the crime. Investigator Clemons later showed the victim a photograph line-up at the hospital containing an older photograph of the defendant, and the victim was unable to identify anyone as the shooter.

2

The victim was hospitalized for two and a half weeks. The bullet went through the victim's stomach and liver, his gallbladder was removed, and doctors had to "take a section of [his] stomach out and sew it back up." While the victim was hospitalized, Investigator Clemons compared the statements of witnesses to obtain a more accurate description of the defendant, and he discovered that the defendant recently updated his driver's license photograph. The witnesses described the defendant as having longer hair "that looked like dreads" at the time of the offense, a hairstyle depicted in the defendant's driver's license photograph. Investigator Clemons created a second line-up nearly one month later that included the more recent photograph of the defendant, and the victim identified the defendant. Ms. Moore also identified the defendant from the more recent photograph in a photograph line-up on February 18, 2011, circling the defendant's photograph and writing, "I saw the person I circled above on the shooting on May 30[.]"

**Analysis**

**I. Sufficiency of the Evidence**

The defendant argues that the evidence is insufficient to support his convictions for attempted voluntary manslaughter and employment of a firearm during an attempt to commit a dangerous felony. Specifically, he contends that there was insufficient evidence to establish that he was the individual who shot the victim because the victim did not identify him in the initial lineup, and Ms. Moore's identification occurred eight months after the shooting.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after reviewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or

circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

The testimony of a witness identifying the defendant as the perpetrator of a crime "is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). Inconsistency, inaccuracy, and omissions in the identification of the defendant are questions for the jury to consider in apportioning the weight to give to the testimony of a witness otherwise able to positively identify the defendant. *Id.* (citing *Matthews*, 805 S.W.2d at 779). Because the jury resolves questions of witness credibility, this court will not disturb the verdict on appeal "unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the [defendant's] guilt." *Radley*, 29 S.W.3d at 537.

Tennessee Code Annotated section 39-13-211(a) (2010) defines voluntary manslaughter as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. *Id.* § 39-11-302(b). A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a)(1)-(3). Tennessee Code Annotated section 39-17-1324(b)(2) also provides that "[i]t is an offense to employ a firearm during the . . . [a]ttempt to commit a dangerous felony." Voluntary manslaughter constitutes a dangerous felony. T.C.A. § 39-17-1324(i)(1)(C).

Here, the victim witnessed the defendant approach him, initiate a confrontation, and then brandish a gun. Both the victim and Ms. Moore witnessed the defendant firing a weapon from the driveway of "the gray house" and called 911 to report the shooting. The victim told Investigator Clemons that "Little Derick" had shot him, which led Investigator Clemons to consider the defendant as a suspect. Investigator Clemons created two different photograph line-ups, with the first containing an older photograph of the defendant and the second containing the defendant's recently updated driver's license photograph. Both the victim and Ms. Moore identified the defendant in the photograph line-up with his more recent photograph and in the courtroom during trial. Although the victim failed to identify the defendant in the first line-up that he viewed, the line-up was administered shortly after the victim arrived at the hospital with gunshot wounds. Investigator Clemons also explained that the first line-up contained an older photograph of the defendant and that his appearance in that photograph was significantly different from his appearance at the time of the incident. After further speaking with witnesses, Investigator Clemons was able to obtain a more recent photograph of the defendant for the second line-up that more closely resembled the defendant at the time of the shooting. The jury was made aware that the victim failed to identify the defendant in the first lineup and that Ms. Moore's identification occurred nearly eight months after the shooting.[1] The jury was also made aware that the victim identified the defendant by name as the perpetrator and that the victim had a prior acquaintance with the defendant. The jury, as the final arbiter of the credibility of the witnesses, chose to credit the testimony of the victim and Ms. Moore that the defendant was the shooter. We conclude that the record fully supports the finding of the jury. Accordingly, the defendant is not entitled to any relief as to this issue.

**Conclusion**

Based upon the foregoing reasons, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[1] The defendant made no objection to the testimony of either witness identifying him as the shooter during the trial.

5