IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 2, 2016

**STATE OF TENNESSEE v. JASPER CLAYTON**

**Appeal from the Criminal Court for Shelby County**
**No. 1302973    Paula L. Skahan, Judge**

_____

**No. W2015-00785-CCA-R3-CD  -  Filed May 18, 2016**

_____

The defendant, Jasper Clayton, was convicted of three counts of aggravated robbery, a Class B felony, and two counts of attempted aggravated robbery, a Class C felony.  On appeal, he argues that the evidence is insufficient to sustain his convictions.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Eric Mogy, Memphis, Tennessee, for the Appellant, Jasper Clayton.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Austin Scofield and Shannon McKenna, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

This case arose after the defendant and his co-defendant, Anthony Wortham, robbed the victims during the course of an attempted drug sale.  The defendant and Mr. Wortham were tried together, and only the defendant's convictions are the subject of this appeal.

On the morning of the robbery, Ryan Boykin, Aaron Boykin, Matthew Boykin, Colt Dennison, and Christian Cook went to McLemore's Market in an attempt to purchase marijuana. Mr. Ryan Boykin testified that he drove his car, a white 4-Runner, to the market. Mr. Cook was sitting in the front seat, and Mr. Dennison, Mr. Aaron Boykin, and Mr. Matthew Boykin were in the back seat. They saw Tony Young, whom they knew as "Spike" and whom Mr. Matthew Boykin had befriended the previous summer, and they asked if he knew where they could find marijuana. Mr. Young responded affirmatively, and he got into Mr. Ryan Boykin's vehicle and directed the victims to a nearby residence on Waverly Street. Each of the victims had slightly different accounts of what transpired next.

Mr. Ryan Boykin testified that Mr. Young made a phone call and then directed Ryan to drive to a residence a short distance from the market. They arrived at a residence, and Mr. Young was on the phone with a person later identified as the defendant. Mr. Ryan Boykin saw the defendant walking down the street while Mr. Young was on the phone, and the defendant approached Mr. Ryan Boykin's window. Mr. Ryan Boykin testified that the defendant was wearing a "Ralph Lauren" vest that was "a bluish, purplish color." The defendant instructed Mr. Ryan Boykin to pull forward to a different house. Mr. Ryan Boykin testified that he pulled up to "a blue house," at which point Mr. Young exited the vehicle.

Mr. Young began walking down the street, and Mr. Ryan Boykin testified that Mr. Young turned and looked at the victims as if "to warn [them] about something." Mr. Young continued walking, and the defendant approached Mr. Ryan Boykin's vehicle for a second time and asked the victims what they wanted. The defendant went into the house and returned about ten minutes later with the small amount of marijuana that the victims had requested. Mr. Ryan Boykin testified that Mr. Cook was in the front passenger's seat and that he rolled down the window to give the defendant money in exchange for the marijuana. As the defendant handed Mr. Cook the marijuana, Mr. Ryan Boykin saw "four other men come around the corner." Mr. Ryan Boykin testified that all four men were wearing masks and that the defendant was the only person without a mask. The defendant grabbed the marijuana back from Mr. Cook, and the four masked men approached the doors of Mr. Ryan Boykin's car.

After the defendant took the marijuana from Mr. Cook, Mr. Ryan Boykin saw the defendant pull out a gun, which he believed was a BB pistol. The defendant came to Mr. Ryan Boykin's side of the car and placed the gun to his head, demanding that Mr. Ryan Boykin give him "everything" he had. Mr. Ryan Boykin testified that someone reached into the car and stole his phone from his lap, and the defendant told the victims to get out of the car. Mr. Ryan Boykin saw one of the men hit Mr. Cook in the head with a gun, and Mr. Ryan Boykin testified that the defendant struck him in the face with the barrel of

2

his gun. Mr. Ryan Boykin exited the vehicle, and the defendant started patting down his pockets. Mr. Ryan Boykin testified that the other four men then fled the scene. The defendant said, "F**k y'all, welcome to South Memphis," and got into Mr. Ryan Boykin's car and drove away.

Mr. Ryan Boykin testified that Mr. Aaron Boykin was still in the car when the defendant drove away. Mr. Aaron Boykin leaped out of the moving car, and the victims began to chase the car. Mr. Ryan Boykin heard a gunshot, and police arrived a short time later.

Mr. Ryan Boykin testified that he was seventeen years old at the time of the incident. In addition to his own phone, he testified that Mr. Cook's cell phone was also stolen. Mr. Ryan Boykin also testified that $75.00 was taken from Mr. Matthew Boykin. Mr. Ryan Boykin's car was recovered a few days after the robbery, and he testified that his stereo system was missing from the car, along with several other items. He estimated that the total value of his vehicle and the missing items was around $7,500. The day after the robbery, he went to the police station to look at photographic lineups. He identified a photograph of the defendant, writing "I'm sure he's the guy who had the fake BB pistol and jacked my car." Mr. Ryan Boykin also identified the defendant in the courtroom, and he testified that the defendant looked very different at trial than he did at the time of the robbery. He identified the defendant in the courtroom as having an "[A]fro" and glasses, and he testified that the defendant did not have an Afro at the time he committed the robbery. In the photograph that Mr. Ryan Boykin selected, the defendant also did not have an Afro or glasses.

Mr. Dennison testified that he was sixteen years old at the time of the robbery. He was sitting in the backseat of Mr. Ryan Boykin's car behind the driver's seat when they arrived at McLemore Market. He said that Mr. Young got into the vehicle and made a phone call as they drove away from the market. Mr. Dennison stated that they drove to a residence that was "probably a mile" away from the market. When they arrived, Mr. Young was still on the phone. Once the call ended, Mr. Young told the victims that the other participant in the phone call, the defendant, would "take care" of them, and he exited the vehicle. Mr. Dennison testified that the defendant then approached the car and asked the victims what they wanted. Mr. Dennison said that the defendant was wearing "a light blue . . . Polo vest." The victims requested to purchase a small amount of marijuana, and the defendant returned to a house. The defendant returned to the car a second time, and he approached the front passenger's window and again asked Mr. Cook what the victims wanted. After confirming that they wanted "$20.00 worth . . . of Kush," the defendant returned to the house.

3

Mr. Dennison testified that the robbery occurred when the defendant returned to the vehicle for a third time. Mr. Dennison saw Mr. Cook exchange money for the marijuana, and then the defendant grabbed Mr. Cook's hand. Mr. Dennison saw "like three more males with mask[s] on" approach the car. Mr. Dennison initially testified that all of the men were armed, but he later testified that the defendant was not armed. Mr. Dennison stated that one of the masked men demanded that Mr. Dennison give him "whatever [he] had," and Mr. Dennison said that he did not surrender any of his possessions. He saw both Mr. Ryan Boykin and Mr. Cook struck with pistols, and the men ordered the victims to get out of the vehicle. Mr. Dennison testified that once the victims were out of the vehicle, the defendant got into the driver's seat and drove away after saying, "Welcome to South Memphis, B***h." After the defendant left in Ryan's car, Mr. Dennison heard a gunshot, although he was not sure who fired the shot.

The day after the robbery, Mr. Dennison went to the police station and gave a statement about the robbery. He also viewed a photographic lineup, and he identified the defendant. Next to the defendant's photograph, Mr. Dennison wrote "car driver," but he scratched out that phrase and wrote "[t]he robber that took the original vehicle we were in after they took our personal items." He explained that he revised his phrasing because he believed that "car driver" was too vague of a description. During the trial, Mr. Dennison testified that he could not identify anyone in the courtroom who was involved in the robbery, but he testified that he did not make a mistake in his identification of the defendant from the photographic lineup.

Mr. Cook testified that he was sitting in the front seat of Mr. Ryan Boykin's car when they pulled in to McLemore Market. He explained that the victims had been denied by several people at the market before Mr. Young agreed to obtain marijuana for them. Mr. Young made a phone call and told the victims to drive to a residence on Waverly Street. Mr. Young directed them to a "blue house," and he informed the victims that the marijuana seller would arrive momentarily. Mr. Cook testified that Mr. Young exited the vehicle and that the defendant approached the vehicle a short time later. He asked if the victims were the ones who were looking to buy marijuana, and he directed them to pull up closer to a car that was in front of them. Mr. Cook testified that the defendant was wearing "a poufy jacket" that looked like "a black, looked like a white Polo kind." The defendant said that he would procure the marijuana, and he went behind the blue house. He returned and asked whether the victims were "looking for Reggie, or Kush." Mr. Cook explained that "Reggie is like, not as good as weed and Kush is the best of the best you can get." Mr. Cook specified that they wanted "Kush," and the defendant returned to the house.

When the defendant came back a third time, he gave Mr. Cook the marijuana but did not immediately take the money. Mr. Cook testified that the defendant went to Mr.

4

Ryan Boykin's side of the car and pulled out a pistol, and three armed men with "ski masks" approached the vehicle. Mr. Cook said that the men told the victims "welcome to South Memphis" and told the victims "to give them everything that they had." Mr. Cook stated that the men began "pistol whipping" him and Mr. Ryan Boykin. Mr. Cook testified that someone took his cell phone, and the victims were ordered out of the car. Mr. Cook believed that Mr. Ryan Boykin's cell phone was taken and that Mr. Dennison, Mr. Aaron Boykin, and Mr. Matthew Boykin had money stolen.

Mr. Cook gave a statement to police the next day at the police station. He also viewed a photo spread, and he identified a person who was not the defendant. Next to the photograph, he wrote, "Was in the back by [Mr.] Aaron [Boykin] pointing a gun at him[.] [H]e had a mask on." He testified that he selected a person from the photographic lineup who he was not entirely positive was the person who robbed him. He testified that he believed the person that he selected participated in the robbery because the robber was heavyset and had dreadlocks, and of the six photographs, the person that he selected most closely matched that description. He could not identify anyone in the courtroom who participated in the robbery.

Mr. Aaron Boykin testified that he was sitting in the middle of the backseat in Mr. Ryan Boykin's car. He testified that he had met Mr. Young possibly "twice" prior to their interaction at McLemore Market. Mr. Aaron Boykin stated that Mr. Young got into a vehicle, and the group drove to a "baby blue house" on Waverly Street. When they arrived, Mr. Young exited the vehicle, and the defendant approached the car and asked the victims what they needed. Mr. Aaron Boykin testified that the defendant was wearing a "Polo . . . navy blue vest." He said that the defendant went into the blue house and returned several times. On the third trip, he gave Mr. Cook the marijuana and "three others came up behind" the victims "and opened the doors and put guns to [their] heads." Mr. Aaron Boykin said that all of the men were armed and that all of the men except for the defendant were wearing masks. He testified that the defendant went to Mr. Ryan Boykin's side of the vehicle and told Mr. Ryan Boykin to exit the car. Mr. Aaron Boykin heard the defendant tell the rest of the victims to get out of the car and give the men "everything" that they had. Mr. Aaron Boykin testified that Mr. Cook and Mr. Ryan Boykin "got pistol whipped a few times by dude." Mr. Aaron Boykin stated he was still in the car when the defendant started to drive away, but he was able to jump out of the car. Mr. Aaron Boykin explained that Mr. Ryan Boykin urged the victims to chase after the car, and they heard a gunshot shortly thereafter.

Mr. Aaron Boykin went to the police station the day after the robbery and gave a statement. He was shown a photographic lineup, and he selected the defendant, writing, "This is the dude that took off with the car" next to the defendant's photograph. Mr.

Aaron Boykin was unable to identify anyone in the courtroom who participated in the robbery.

Mr. Matthew Boykin testified that he was twenty years old at the time of the robbery. He stated that Mr. Young got into the car and that they all drove to a house on Waverly Street. When they arrived, Mr. Young got out of the car while talking on the phone. He directed the victims "to pull up beside a car," and they complied. Mr. Young then left, and Mr. Matthew Boykin was not sure where he went. Mr. Matthew Boykin testified that the defendant approached the vehicle around ten minutes later and that the defendant went into a house and returned to the vehicle several times. He stated that the defendant returned a second time with "like three other dudes and that's when, you know, stuff hit the fan." Mr. Matthew Boykin testified that the three men were wearing masks but that the defendant was not, and he stated that all three men were armed. He said that the defendant was wearing "a purple hoodie, or something" and also was armed. The men held the victims at gun point, and Mr. Matthew Boykin testified that money was taken from him. He stated that once Mr. Ryan Boykin exited the car, the four men got into the car and "high-tailed it" down the street.

Mr. Matthew Boykin went to meet with police the day after the robbery. He was shown a photograph lineup, and he selected the photograph of the defendant. Next to the photograph, he wrote, "One of the guys he was at the right side of the vehicle, had a ski mask on." When asked how he identified the person if he had a mask on, Mr. Matthew Boykin testified, "I'm not sure, it's just kind of what I felt, you know, I could see his eyes and everything. I'm not, like, 100% insistent[] accurately, particularly." He also identified a second person from the same lineup. This individual was the same individual identified by Mr. Cook, and next to the photograph of the second individual, Mr. Matthew Boykin wrote "[g]ot in the driver's seat after pistol whipping [Mr.] Ryan [Boykin], then immediately drove off with the vehicle." Mr. Matthew Boykin could not identify anyone in the courtroom who participated in the robbery.

Mr. Young testified that he recalled a robbery occurring on December 9, 2012. He stated that he was at McLemore Market prior to the robbery. He met with the victims and agreed to get them marijuana. He stated that they "rode over" to "John Michael's house." The defendant then came out and told the victims "to pull up the street." Mr. Young testified that the defendant and four other men robbed the victims. He stated that the defendant was the only person with a gun. He heard two gun shots. Mr. Young agreed that when an officer asked him whether he participated in the robbery, he answered that "They asked me and I went along with it, I have helped get them some marijuana before." He testified that he had no knowledge that a robbery was pending when he took the victims to the defendant. Mr. Young admitted that he told police that the defendant, Mr. Wortham, and a third person robbed the victims, but he testified that he was not telling

the truth. He stated that he said Mr. Wortham and the third person were involved because he "was hyped up and completely off of [his] medicine and homophobic." He testified that he took "mind medicine." At trial, he testified that only the defendant was involved with the robbery.

Mr. Young identified the defendant in a photograph lineup. Next to the defendant's picture, Mr. Young wrote, "That Jasper fired a shot at him and the rest of them took and beat up them and got the money." Mr. Young also identified the defendant in the courtroom at trial. Mr. Young testified that on the morning of trial, friends of Mr. Wortham asked him not to come to court, but he stated that the individuals were "just playing."

Officer Adam Pickering testified that he was a crime scene investigator with the Memphis Police Department ("MPD"). Officer Pickering tested the 4-Runner for fingerprints, and he was only able to find one print "that was even possibly usable" was on the review mirror inside of the vehicle. Officer Robert Winston also worked for the MPD in the crime scene investigation unit. He testified that he was not able to make an identification using the latent print.

Sergeant Veronica Wimbley testified that she was an investigator for the MPD. She showed the photographic lineup to Mr. Dennison, and she said that it only took "one minute" for Mr. Dennison to choose the defendant's photograph. She said that based upon the defendant's appearance in the courtroom that he looked like the person in the photograph that Mr. Dennison chose, but she was not certain.

Detective Samuel McMinn testified that he showed photo spreads to Mr. Ryan Boykin, Mr. Cook, Mr. Aaron Boykin, and Mr. Matthew Boykin. He explained that the victims were separated from each other to ensure that they did not converse with one another between their statements. Detective McMinn agreed that it concerned him that Mr. Matthew Boykin indicated that the defendant was wearing a ski mask, but he testified that he accepted the identification. Detective McMinn testified that Mr. Cook was shown a photograph lineup that included the defendant's photograph and that Mr. Cook was unable to identify the defendant. Officer Kenneth Adams testified that he showed Mr. Matthew Boykin the photo spread in which he identified the defendant and one other individual.

At the conclusion of the trial, the jury convicted the defendant of three counts of aggravated robbery and two counts of attempted aggravated robbery. The trial court imposed an effective sentence of twenty-four years. The defendant filed a motion for new trial, which the trial court denied. He filed a timely notice of appeal, and we proceed to consider his claims.

## ANALYSIS

### Sufficiency of the Evidence

The defendant argues that the evidence was insufficient to sustain his convictions. He contends that Mr. Young's testimony was not credible because he "was so intoxicated on the [witness] stand." He argues that the accounts of the victims were so varied and inconsistent that they were unreliable and not credible. Finally, he contends that it was revealed at trial that Mr. Dennison was permitted to sit with Mr. Ryan Boykin, Mr. Aaron Boykin, and Mr. Matthew Boykin after Mr. Dennison identified the defendant, giving him the opportunity "to taint the rest of the photo identifications." The State responds that the evidence was sufficient.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "[A]lthough inconsistencies or inaccuracies may make the witness a less credible witness, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

8

Aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-401(a); -402(a)(1) (2010). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3).

Viewing the evidence in the light most favorable to the State, the victims went to the McLemore Market to purchase marijuana. Mr. Young directed them to a residence on Waverly Street, where the defendant approached the victims and asked them what they wanted. After delivering the marijuana, the defendant and several other masked men pointed guns at the victims and demanded that they give them "everything that they had." Mr. Ryan Boykin and Mr. Cook testified that their cell phones were stolen, and Mr. Matthew Boykin testified that money was stolen from him. The defendant then drove away in Mr. Ryan Boykin's vehicle, which was discovered several days later with numerous items missing from the interior. Mr. Ryan Boykin and Mr. Young identified the defendant in a photographic lineup and in court, and Mr. Matthew Boykin, Mr. Aaron Boykin, and Mr. Dennison all identified the defendant in a photographic lineup. Mr. Ryan Boykin also testified that the defendant looked very different at the time of the robbery than he did in the courtroom. In the photograph shown to the victims, the defendant did not have an Afro or glasses.

All of the victims testified to the same general sequence of events, with minor discrepancies. The jury was made aware of the fact that there was slight disagreement on whether the victims proceeded directly to the blue house or stopped at another residence first, whether the defendant was armed, and whether there were three or four additional attackers. The variation in the testimonies of the victims was not significant enough to undermine the confidence in the verdict of the jury. Further, four of the victims and Mr. Young were able to identify the defendant from a photographic lineup days after the robbery. Officers testified that, although they did not observe the victims constantly, they made every effort to keep the victims separate while showing them the photographic spread. There was no evidence that Mr. Dennison informed Mr. Ryan Boykin, Mr. Aaron Boykin, or Mr. Matthew Boykin which person to identify in the photographic lineup. Finally, to the extent that the defendant may be arguing that the identification process was tainted to the point of inadmissibility, we agree with the State that this argument is waived. The defendant did not raise the issue in his motion for new trial, and he has not asked this court to review the issue for plain error. *See* Tenn. R. App. P. 3(e) (stating that "no issue presented for review shall be predicated upon error in the

admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived").

## CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE