IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2017

**STATE OF TENNESSEE v. MARK L. WATSON**

**Appeal from the Circuit Court for Stewart County**
**No. 2015-CR-36     David D. Wolfe, Judge**

_____

**No. M2016-02392-CCA-R3-CD**

_____

A Stewart County jury convicted the Defendant, Mark L. Watson, of vandalism of property valued at $1,000 or more but less than $10,000.  The trial court sentenced the Defendant to two years on probation.  On appeal, the Defendant asserts that the evidence is insufficient to support the conviction.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Shipp R. Weems, District Public Defender, and Richard D. Taylor, Assistant District Public Defender, for the appellant, Mark L. Watson.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; W. Ray Crouch, Jr., District Attorney General; and Erin D. Bryson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Billy Stavely, the victim, testified that he has two residences: one in Stewart County and one in Glen Carbon, Illinois.  He stated that he has lived at the Stewart County residence with his wife since 1999 and that he purchased an adjacent property, which is located "on the same farm."  He purchased the adjacent property from an estate left by a woman to her three children: Mr. Gary Watson, Ms. Kathy Watson, and the

Defendant. Mr. Stavely explained that on the adjacent property, there is a shed and "the remnants of a house trailer." He testified that the shed and trailer were on the land when he closed on the property on June 11, 2014, and that he intended to rent the trailer. He denied ever stating that he would burn or demolish the trailer. Mr. Stavely testified that he told Ms. Watson, the estate's executor, that she "had all the time she wanted to remove a china cabinet" that belonged to her family. He also testified that the trailer contained "[n]early everything that anyone needed to live in a house" and that he began cleaning and getting rid of items he did not want on September 5, 2014. He stated that after he was done cleaning that day, he secured the back exterior door by screwing boards across the door frame, and he locked the front exterior door. He explained that the front door could be opened with a credit card when locked, a fact that he learned from Mr. Watson.

Mr. Stavely left the trailer in the afternoon of September 5, 2014, and did not return until the afternoon of September 6, 2014. When he returned, he discovered the front door still locked and the back door "kicked open." He stated that that the trailer was in a "damaged condition" and "in total disarray," that the walls were "knocked down" and "ripped off," and that "[s]ome of the windows were knocked out." Mr. Stavely identified photographs showing that "the electrical wiring and the wall had been totally demolished," that the washer and dryer were removed, that items were piled on the couch, that some of the wainscoting had been "torn" from the wall, and that a wire had been ripped out from the floor up to the ceiling. He noted several other photographic exhibits showed damage to the dry wall and electrical wiring in every room of the trailer and to the furnace. He also testified that there was damage to the exterior of the trailer as well, including missing electrical wiring and a missing air conditioner. He estimated that the coil located inside the air conditioning unit had a replacement cost of several hundred dollars.

Mr. Stavely testified that upon discovering the damage to the trailer, he reported the damage to the Sheriff's Department. He testified that he also called Ms. Watson and informed her that she should retrieve her china cabinet because he feared further damage to the trailer. He stated that he purchased the property and trailer for $7,500, characterizing the purchase as "an extreme bargain," but that the trailer had a value of around $15,000 to $18,000. He originally estimated that the damage to the trailer to be around $6,000 to $7,000.

Mr. Stavely testified that prior to the vandalism, he spoke by telephone with the Defendant about the trailer. Mr. Stavely also testified that during their telephone conversation, the Defendant informed him that he would not let Mr. Watson sell the trailer for the price Mr. Watson requested because he believed it was worth more than Mr. Watson's asking price. Mr. Stavely stated that he did not speak to the Defendant at any point between their conversation and the vandalism. He also stated that after the

vandalism, he spoke with the Defendant by telephone, and the Defendant asked him not to pursue charges against him.

On cross-examination, Mr. Stavely testified that he did not have prior contact with the Defendant before speaking with him by telephone about the trailer. He also testified that he did not have a bill of sale for the trailer because the trailer was permanently attached to the real estate. He stated that between June 2014 and September 2014 the trailer did not have "water service." When asked by defense counsel whether there was a water pump or city water supply on the property, Mr. Stavely answered in the affirmative and stated that he did not check whether the pump was working because the pump was stolen. Mr. Stavely testified that he had not yet rented the trailer. He stated that following the vandalism, he had a contractor go to the trailer and assess the damage but did not request an estimate for the cost of repair. He testified that he did not recall whether the Defendant apologized for the vandalism but that the Defendant offered to repair the damage if he was provided with the materials. He denied having told police that Ms. Watson told him that the Defendant was responsible for the vandalism.

Mr. Stavely acknowledged that the home was not described as "mobile" in the deed because it was a "permanent" home. He testified that the electrical service was turned off at the time but that the connection could be turned on at any point. He stated that he never received a key to the front door because he never personally saw Mr. Watson and did not know whether Mr. Watson possessed the key. He also stated that as a result of his telephone conversation with the Defendant, Mr. Watson increased the asking price for the property from $6,000 to $7,500. He testified that although the trailer was appraised at $15,000, Mr. Watson needed money to pay off an existing loan. Mr. Stavely stated that he agreed to the increased asking price after inspecting the trailer for himself and discovering that the trailer was newer and larger than expected. He explained that due to the urgency for money, Mr. Watson told him to inspect the trailer for himself and instructed him how to open the door with a credit card.

Ms. Olivia Wann, an attorney in Stewart County, testified that she prepared the deed for the property where the trailer was located. She prepared the deed without the benefit of a title examination and did not provide any tax advice. She stated that the description of the property was taken from the previous deed. She also stated that generally, a description of a house would not be included in the deed because it is fixed to the land. Ms. Wann believed a written agreement would be necessary in the event personal property left on the real property was to be retrieved after the closing date. She was not involved in any aspect of the negotiations or discussions involving the trailer.

On cross-examination, Ms. Wann testified that if she prepares a deed for real property with a residential mobile home, she lists the mobile home in the deed. She also

testified that mobile homes usually have a title and that the title is typically transferred. She stated that if the mobile home does not have a title, the owner of the property files an affidavit of affixation, which become a part of the chain of title. In the case of the instant real estate transfer, there was no description of the trailer in the deed.

On re-direct examination, Ms. Wann testified that owners of older mobile homes may not have the titling documents for their mobile homes and that it is common for an owner to transfer a mobile home without an exchange of titling documents. On re-cross examination, she testified that in other land transactions she has done, the presence of a mobile home is a "burden" in the transaction.

Officer Jody Batton with the Stewart County Sheriff's Office testified that he responded to Mr. Stavely's vandalism report. He said that every wall of the trailer appeared to be damaged and that wires were pulled from the walls. Officer Batton testified that he went to the Defendant's residence to speak with him. He described the Defendant's demeanor as "he knew what was going on" but that he was not angry. He took a written statement from the Defendant, which he read in court and entered as an exhibit, as follows:

> Mr. Stavely bought our family's property a while back. At the closing he stated he would give us time to get whatever we wanted from the trailer. He was going to burn it or bulldoze it when we were finished.
>
> That morning I went to the trailer and took the cooper wire out. But before that, I sent a text to Kathy, who is the liaison between us, to tell him that I was going to be there. Later on, Mr. Stavely went to the trailer and thought it had been robbed of the wire.
>
> I called Mr. Stavely and we talked a while, but he was still mad about the misunderstanding. I told him I would do any work he needed for free, and I apologized for the lack of communication. We may still be able to work this out.

Officer Batton stated that following the conclusion of his investigation, he decided to arrest the Defendant and charge him with vandalism.

On cross-examination, Officer Batton testified that the Defendant was cooperative, showed him a pile of copper wires, and did not engage in a cover up or flee. He stated that the Defendant wanted to "work all this out" with Mr. Stavely and that the Defendant kept insisting that this was a "misunderstanding" and a "failure to communicate."

The Defendant stated that he moved onto the property in 2004 and purchased the trailer to put on the land. He also stated that the trailer was placed on cinder blocks and "strapped" down to the land. He lived in the trailer from 2004 until 2012. He testified that because Mr. Stavely diverted the creek that supplied the trailer with its water supply, the trailer did not have water service after he moved away in 2012. He stated that after a flood occurred, the insulation under the flooring of the trailer grew mold and mildew. He also stated that the trailer was fully furnished and that Mr. Stavely allowed him to keep his belongings stored at the trailer until he bought new land. The Defendant testified that Mr. Stavely said that he would move the trailer with his own equipment onto the Defendant's new land if within a "reasonable distance." He also testified that Mr. Stavely informed him that he was not interested in the trailer, explaining that Mr. Stavely wanted to bulldoze and burn the trailer if he did not remove it from the land. He explained that he did not have a certificate of title for the trailer because he had lost the certificate.

On cross-examination, the Defendant testified that he did not intend to sell the trailer to Mr. Stavely and that he did not move the trailer himself because he did not have the necessary equipment. He also testified that he first offered to sell Mr. Stavely the land for $14,000 but that he lowered the price to $7,000 because Mr. Stavely did not want the trailer and it was not part of the transaction. He stated that the trailer is currently "stripped down to the studs," explaining that Mr. Stavely removed the drywall and the siding from the trailer.

The Defendant testified that he did not know whether his personal property had been removed from the trailer, despite testifying to the fact that one could see through the trailer because it had been "stripped down." He also testified that he did not have a written agreement with Mr. Stavely about removing the trailer from the property because he had known Mr. Stavely for years and trusted him.

Ms. Watson testified that she spoke with Mr. Stavely after executing the deed to the property. She summarized their conversation as follows:

> We were all very happy to have that property sold. Mr. Stavely told me that he was very happy to have that piece of his farm back again. He had tried to buy that piece prior to [Mr. Watson] buying it, and now that [Mr. Watson] was selling it, he would have his entire farm back intact again.
>
> And I said, well, we have a lot of stuff inside that trailer. He said that wasn't a problem, we could have as much time as we wanted to remove the things, and that … he had told [Mr. Watson] he would move the

trailer for him. But that if he didn't want the trailer, that he was either going to burn it or bulldoze it, that all he was interested in was the land.

She testified that Mr. Stavely said that they could take as much time as they needed emptying the trailer and that they could "do with the trailer what [they] wanted." She understood that the trailer was not being sold with the land. Ms. Watson testified that on September 6, 2014, the Defendant sent her a text message informing her that he was going to the trailer to retrieve some personal property and asking her to "let Mr. Stavely know so that there wouldn't be any trouble." She testified that she did not read the Defendant's text message until after the Defendant had already been to the trailer because she was in church when she received the text message. She stated that after reading the text message, she called Mr. Stavely, who was "very upset" and told her that his trailer had been vandalized. She informed him that the Defendant went to the trailer to retrieve personal property and that the trailer had not been vandalized by the Defendant because it was Mr. Watson's trailer. Ms. Watson testified that, upon her last visit to the trailer, the trailer had mold on the walls.

On cross-examination, Ms. Watson acknowledged that she gave a statement to the police in which she said Mr. Watson "formerly owned the trailer and sold it to [Mr.] Stavely." She testified that she told Officer Batton that the Defendant could not have vandalized the trailer because Mr. Watson was the owner and that Mr. Watson gave the Defendant permission to go to the trailer to retrieve personal property. She also testified that she told Officer Batton this information at the Defendant's house. She stated that there was mold in the living room and kitchen and that the mold was green and black. The prosecutor showed her pictures of the trailer following the vandalism, and she stated that she could not see any mold in the photographs. She testified that the mold was not photographed because it "was up near the ceiling" and did not see any photographs of the ceiling.

On re-direct examination, Ms. Watson testified that during her last visit to the trailer, it smelled "damp and musty." She also testified that she overheard a telephone conversation between the Defendant and Mr. Stavely following the vandalism. She stated that the Defendant apologized to Mr. Stavely, explaining that there had been a misunderstanding and "that he would go in and fix anything that had been wrecked."

Following Ms. Watson's testimony, the prosecutor called Officer Batton back to the witness stand for rebuttal proof. Officer Batton testified that he did not recall Ms. Watson or anyone else informing him that the trailer belonged to Mr. Watson. A video recording of Officer Batton's conversation with the Defendant and Ms. Watson was played for the jury. While the video was playing, Officer Batton described the contents of the recording. He explained that the recording took place at the Defendant's residence

and that the two people in the video were the Defendant and Ms. Watson. He testified that during his investigation, no one claimed that the trailer did not belong to Mr. Stavely.

Following the conclusion of proof, the jury found the Defendant guilty of vandalism of property valued $1,000 or more but less than $10,000. *See* T.C.A. § 39-14-103, -105 (2014). The trial court sentenced the Defendant to serve two years on probation. The Defendant appeals.

## ANALYSIS

On appeal, the Defendant argues that the evidence is insufficient to sustain his conviction because the State failed to prove that Mr. Stavely owned the trailer. The State argues that the evidence is sufficient. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The appellate court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). Instead, this court affords the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Elkins,* 102 S.W.3d 578, 581 (Tenn. 2003). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). The conviction replaces the presumption of innocence with a presumption of guilt, and the accused has the burden of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

A person commits vandalism when he or she knowingly "[c]auses damage to or the destruction of any real or personal property of another … knowing that the person does not have the owner's effective consent." T.C.A. § 39-14-408(b)(1). If the value of the property that was vandalized is $1,000 or more but less than $10,000, the defendant is guilty of a Class D felony. *Id.* § 39-14-105(a)(3) (2014). An owner of property is "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or

interest is unlawful and without whose consent the defendant has no authority to exert control over the property." *Id.* § 39-11-106(a)(26).

In the light most favorable to the State, the evidence establishes that the Defendant admitted to Mr. Stavely that he caused the damage to the trailer, offered to repair the damage, and asked him not to pursue charges against him. Moreover, the Defendant showed Officer Batton a pile of copper wires in his possession and acknowledged that he obtained items from the trailer.

The Defendant specifically challenges whether the State's evidence is sufficient to prove that Mr. Stavely was the owner of the trailer. The Defendant and Ms. Watson testified at trial that the trailer did not belong to Mr. Stavely, that it was not part of the real estate transaction, that it was damaged with mold, and that Mr. Stavely intended to demolish it. Mr. Stavely, on the other hand, testified that he was the owner of the trailer, that he owned the land on which the trailer sat, that the trailer was attached to the land when he purchased from it from the Watsons, that he intended to clean the trailer and rent it out, and that he agreed to an increase in the purchase price of the land after inspecting the trailer. Moreover, Ms. Watson gave a written statement to the police where she indicated that Mr. Watson "formerly owned the trailer and sold it to [Mr.] Stavely." Ms. Watson also acknowledged that, although she had testified that the trailer had mold on the walls, none was visible in the photographs because the mold was on the ceiling. By finding the Defendant guilty, the jury accredited Mr. Stavely's testimony, which stated that he was the owner of the trailer and, thus, the victim of the vandalism. *Bland*, 958 S.W.2d at 659. Accordingly, we hold that the evidence is sufficient to support the Defendant's vandalism conviction.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE