IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2020

## STATE OF TENNESSEE v. DETERRIO HARRISON

**Appeal from the Circuit Court for Madison County**
**No. 18-951    Donald H. Allen, Judge**

_____

### No. W2019-02092-CCA-R3-CD

_____

The Defendant, Deterrio Harrison, appeals his conviction for aggravated robbery, for which he received a twelve-year sentence. On appeal, the Defendant contends that the evidence is insufficient to support his conviction. Upon reviewing the record, the parties' briefs, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Deterrio Harrison.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

The evidence presented at trial established that on July 23, 2018, the Defendant and his co-defendant, Mr. Anthwan Howard, approached the victim, Ms. Katie Tice, and her four-year-old son as they were leaving a store. The Defendant pointed a gun at the victim's head, demanded her belongings, pointed the gun at the victim's crying son, and threatened to shoot him if he did not stop crying. The Defendant took the victim's cellular phone, her wallet, and the bag of items that she had purchased from the store, and

the Defendant and Mr. Howard fled the scene. The Defendant and Mr. Howard later were arrested and charged with aggravated robbery.

The victim testified that at around noon on July 23, 2018, she and her son walked to a store located close to the apartment complex where she lived in Jackson, Tennessee. They followed a trail that led from the apartment complex to the back of the store. While at the store, she purchased cigarettes for herself and food and drinks for her son, and she paid for some of the items with cash. The victim viewed a surveillance video recording from the store and identified the Defendant as one of two men who were standing behind her in line. The Defendant was wearing a red shirt and had "short twists" in his hair. The other man, Mr. Howard, had long dreadlocks and was wearing a green and black jersey.

The victim stated that after paying for the items, she and her son left the store and began walking toward the trail that led to her apartment. She heard someone running up behind her. She stated that the Defendant pointed a gun to her head and ordered her to get on the ground. The Defendant struck her hand, causing her to drop the bag of items purchased from the store. The victim's son was crying, and the Defendant pointed the gun at her son and threatened to kill him if he did not stop crying. The victim stated that when the Defendant pointed the gun at her son, the Defendant was within an arm's reach of her, and she was able to clearly see his face. She stated that she was afraid that the Defendant would kill her and her son. The Defendant ordered the victim to remain on the ground and to give her belongings to him. She gave him her cellular phone and her wallet, which contained cash, identification information, and insurance cards.

The victim testified that Mr. Howard stood on the side, kept his head down, and did not speak to her. The Defendant instructed Mr. Howard to grab her bag of purchases. The victim stated that although it appeared that Mr. Howard initially refused, he grabbed the bag, and he and the Defendant ran toward the same apartment complex where the victim lived. The victim and her son ran back to the store, and the police were called. The victim remained on the scene until officers arrived.

On cross-examination, the victim testified that she did not see either of the men with a gun while inside the store. She said she saw the gun when the Defendant pointed it at her son, and she described the gun as small and silver.

Officer Robert Stevens of the Jackson Police Department ("JPD") testified that officers began knocking on doors to apartments in the apartment complex while searching for the suspects. Mr. Howard was detained when he opened the door to his apartment in response to officers' knocking. While standing outside the doorway, officers saw the jersey that Mr. Howard was wearing during the robbery on the back of a couch. Officers executed a search warrant for the apartment and seized the jersey, as

well as identification documents, driver's licenses, social security cards, and wallets belonging to Mr. Howard and the Defendant. Law enforcement were not able to locate the Defendant at the time.

Mr. Howard agreed to testify for the State at trial. He stated that he was charged with aggravated robbery, that the State had not made a definitive offer in exchange for his testimony, and that he hoped to help his case by testifying at trial. He testified that he was unaware that the Defendant had a weapon while inside the store and that the Defendant had not mentioned robbing anyone. Mr. Howard stated that neither he nor the Defendant spoke to the victim or her son while inside the store.

Mr. Howard testified that after he and the Defendant left the store and were walking behind the victim and her son, the Defendant stated that he was "fixin' to try this lady." Mr. Howard did not know if the Defendant was serious, and Mr. Howard told the Defendant that he would not participate. Mr. Howard stated that the Defendant ran up from behind the victim, retrieved a small, black handgun from his pocket, and told the victim to "drop it off." The Defendant took the victim's cellular phone, her wallet, three packages of cigarettes, and a two-liter drink. Mr. Howard said he did not see the Defendant point the gun at the child, but Mr. Howard maintained he was not looking. Instead, Mr. Howard dropped his head and ran past the Defendant. He denied that he helped the Defendant complete the robbery or that the Defendant gave him any money obtained from the robbery. They returned to Mr. Howard's apartment. Mr. Howard stated that after he was arrested, he cooperated with the police and provided a statement.

On cross-examination, Mr. Howard acknowledged that at the time of the offense, he was on probation for a conviction of aggravated assault by causing bodily injury with a deadly weapon. He described the Defendant's handgun as black with silver on top. Mr. Howard did not know what the Defendant did with the gun following the robbery.

JPD Investigators Joseph Williams and Robert Groves interviewed the Defendant on August 2, 2018, following his arrest. The Defendant waived his rights and agreed to an interview. The interview was video recorded and played for the jury at trial. During the interview, the Defendant initially claimed that a third person was involved and committed the robbery. The investigators confronted the Defendant with evidence that no third person was involved. The Defendant denied having a gun, and the investigators informed him that Mr. Howard stated that the robbery was the Defendant's idea and that the victim will identify the Defendant as having a gun. The Defendant responded that he agreed with whatever Mr. Howard had stated. The Defendant gave a signed, written statement in which he admitted that he and Mr. Howard "robbed that lady." He then crossed out "We robbed that lady" and replaced it with "We committed that crime."

At the conclusion of the proof, the jury convicted the Defendant of aggravated robbery. Following a hearing, the trial court imposed a twelve-year sentence to be served in confinement. The Defendant filed a motion for new trial, challenging the sufficiency of the evidence, which the trial court denied following a hearing. This appeal followed.

## ANALYSIS

The Defendant asserts that the evidence is insufficient to support his conviction for aggravated robbery. Specifically, he contends that the evidence fails to establish that he possessed a firearm during the robbery. The State responds that the evidence sufficiently establishes that the Defendant used a firearm to rob the victim. We agree with the State.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

As alleged in the indictment, aggravated robbery is robbery that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person

knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a).

When viewed in a light most favorable to the State, the evidence presented at trial established that the Defendant and Mr. Howard followed the victim and her son from the store and that the Defendant approached the victim and demanded her belongings. Both the victim and Mr. Howard testified that the Defendant pointed a gun at the victim. The victim also testified that the Defendant pointed the gun at her son and threatened to shoot him if he did not stop crying. The victim said that she feared for her life and the life of her son. The victim's cellular phone, wallet containing cash, and her purchases from the store were taken during the robbery. While the Defendant contends that the surveillance video from the store did not show him in possession of a gun while inside the store, the jury chose to credit the testimony of the victim and Mr. Howard that the Defendant produced a gun after leaving the store and used the gun to rob the victim. The jury's decision to credit this testimony is within the purview of the jury as the trier of fact. *See Bland*, 958 S.W.2d at 659. Accordingly, we conclude that the evidence is sufficient to support the Defendant's aggravated robbery conviction.

## CONCLUSION

Discerning no error, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE